## FRANK YORK v. THE STATE.

### No. 100.　Decided December 22, 1909.

**1.—Murder—Bills of Exception—Practice on Appeal.**

　Where, upon appeal from a conviction of murder, the bills of exception in the record were not approved by the trial judge, but refused, and there was no bill by bystanders, there was no question presented for revision.

**2.—Same—Witness—Reputation for Truth.**

　Upon trial for murder, where it appeared that one of the State's witnesses was a gypsy, there was no error in not permitting defendant's counsel to attack said witness' reputation for truth and veracity by offering to read an article from an encyclopedia giving the history of the gypsies as a nomadic race, etc., and because said witness was a stranger in the community.

Appeal from the District Court of Harrison.　Tried below before the Hon. W. C. Buford.

Appeal from a conviction of murder in the second degree; penalty, forty years imprisonment in the penitentiary.

The opinion states the case.

*M. B. Parchman* and *M. P. McGee,* for appellant.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—The appellant in this case was convicted of murder in the second degree, his punishment being assessed at forty years confinement in the penitentiary.

This case is purely dependent upon circumstantial evidence to support the verdict of the jury.　Appellant had been paying attention to the deceased girl for about five years and had been with her and in her company a great deal during that time.　There was one threat of no great weight made against deceased about five years before her death, the substance of which was, he told her if she did not quit fooling with him he would cut her neck off.　The deceased girl was cooking for Dr. Hall and slept at the residence of a negro woman, Charity Matthews, and spent every night there except Tuesday night preceding the discovery of her dead body on Wednesday.　She was in the habit of coming home about 6:30 in the evening and remaining during the night; that appellant came to see her at this place; that on Tuesday afternoon appellant called at the residence of Charity

Matthews and asked for the deceased; that she informed appellant that it was too early for the appearance of deceased and he went away. Appellant went to the residence of another negro family and remained a few moments—fifteen or twenty—and left. Later on, during the afternoon, about dusk, he was seen in company with deceased going in the direction of where the body was found the following day. There was a camp of gypsies near by the scene of the unfortunate tragedy. One of these testified that appellant had been to her camp and wanted his fortune told, but not having the money, went away; that on Wednesday morning before day appellant called at this camp and asked for matches. The gypsy gave him a chunk of fire and he went away with it. The body of deceased was found some three hundred yards from the gypsies' camp, some of her clothing burned and her body burned in several places. Her head was badly beaten and bruised with some sticks and switches. The remnants of these sticks and switches were found at the body, or near by, and the bushes from which these switches and sticks had been cut or broken were also near by, and the evidence is sufficiently strong to show that these switches and sticks were cut or broken from the bushes or trees. The State proved that appellant was seen next morning going from the direction of where the dead body of the girl was found—some of the witnesses saw him running, others said he was walking rapidly and seemed to be in a hurry. There are other slight circumstances relied upon by the State to connect appellant with the homicide. Appellant proved an alibi covering Tuesday night and practically all day Wednesday. This alibi was met by the State's evidence by showing that he was at a different place, or places, than that or those testified to by his witnesses. The expert testimony from three physicians was to the effect that the bruises about the head might or could produce death. The court charged very fully, and we think amply, in regard to the different phases of the evidence, submitting murder, manslaughter and aggravated assault. Special instructions were requested but refused. We are of opinion that the court charged substantially and sufficiently all the issues and theories covered by the requested instructions, in the main charge, and it was therefore not error to refuse these requested instructions.

Bills of exception Nos. 1, 2 and 3 as set out in the transcript were refused by the court. There was no attempt on the part of appellant to otherwise secure these bills of exception. As presented the bills can not be entertained. They are in no way approved, nor are the matters therein contained verified as having occurred. When the bills were refused by the court, if appellant desired to avail himself of the matters of which he made complaint, he should have taken the necessary steps to prove up his bills by bystanders. The matters contained in the bills of exceptions will not, therefore, be revised.

The fourth bill of exceptions is very lengthy. After reciting the evidence of a gypsy witness used by the State, it states she was excused, but subsequently recalled by appellant for further cross-examination. Much of this cross examination, it seems from the qualification of the judge placed on the bill, was had in the absence of the jury. All of this cross-examination seemed to have been an attempt to lay a predicate to introduce an article from the Encyclopedia Britannica, which gave a history of the gypsies. Appellant's contention was that he had the right to read this article to the jury as a means of attacking the standing of the gypsy witness; that inasmuch as the gypsies were a nomadic race, having no home or country, were a traveling race of fakirs, therefore, he could introduce this account of their race and doings throughout the centuries as a means of attacking the reputation of this particular gypsy witness for truthfulness. It seems also to be a further contention that he could read said article to the jury to attack the witness because of the fact that they were wandering people and they were, therefore, strangers in all communities and countries, and, being strangers, such witness' reputation could be attacked or sustained from that standpoint. It has been held that the reputation of a witness can be sustained where the witness is a stranger, under certain circumstances mentioned in the opinions. It is not entirely a novel question in this State. Several opinions have been written by this court upon this subject, but we are not cited to any authority that goes to the extent of holding that an article written in an encyclopedia can be used as evidence to sustain or attack the reputation of a witness for truth and veracity. Without discussing the question further, we are of opinion that the ruling of the court was correct.

It is also urged that the evidence is not sufficient to support the verdict of the jury. It is a case of circumstantial evidence, yet there are facts, we think, sufficient to support the verdict of the jury.

Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*