Jim Butler v. The State.

No. 1356. Decided January 10, 1912.

**1.—Local Option—Bills of Exception—Practice on Appeal.**

Where appellant prepares bills of exception in time, presents them to the opposing counsel and endeavors to get them acted upon by said counsel, and thereafter presents them in due time to the court and endeavors to get action from the court on them, and the court refuses to suggest any errors in the bills so presented and refuses to prepare other bills correctly setting forth the exception, but simply marks the bills refused, the Court of Criminal Appeals will consider the bills so presented without the approval of the lower court. Following Exon v. State, 33 Texas Crim. Rep., 461.

**2.—Same—Bill of Exceptions—Bystanders.**

Where the court refused to allow the bills of exception presented to him and gave no reason for it, and prepared none in lieu of them, it was not necessary for the defendant to secure bills of exception from the bystanders.

**3.—Same—Evidence—Defendant as a Witness.**

Upon trial of a violation of the local option law, defendant could not be made a witness against himself and compelled to testify that he had testified in a Magistrate's Court, and admit that said testimony so given was false; the record showing that he was taken by a constable and brought before said Magistrate's Court, and put under oath without warning and made to testify concerning the very transaction about which he was tried.

**4.—Same—Evidence—Confessions—Arrest.**

Where the party is under arrest or in custody, not being cautioned as the statutes require, his testimony is incompetent; and where he was suspected and arrested for the very offense for which he was convicted in the trial court, there was reversible error.

**5.—Same—Argument of Counsel.**

See opinion for admonition of the court to counsel for the prosecution not to travel outside of the record in their remarks to the jury.

Appeal from the County Court of McCulloch. Tried below before the Hon. Harvey Walker.

Appeal from a conviction of a violation of the local option law; penalty, a fine of $100 and thirty days confinement in the county jail.

The opinion states the case.

*Shropshire & Brown,* for appellant.—On question of compelling defendant to testify against himself: Article 1, section 10, Bill of Rights; article 790, Code Criminal Procedure, as amended by the

Act of 1907; Wood v. State, 22 Texas Crim. App., 431; Calloway v. State, 55 Texas Crim. Rep., 262, 116 S. W. Rep., 575; Gilder v. State, 35 Texas Crim. Rep., 360; Wright v. State, 36 id., 427.

On question of illegitimate argument of counsel: Crawford v. State, 15 Texas Crim. App., 501; Sterling v. State, id., 249; Lester v. State, 2 Texas Crim. App., 432; Hatch v. State, 8 id., 416; Conn v. State, 11 id., 390; Grosse v. State, id., 364; House v. State, 9 id., 567; Fuller v. State, 30 id., 559; Stone v. State, 22 id., 185; Parks v. State, 35 Texas Crim. Rep., 378; White's C. C. P., sec. 773, div. 2, et seq.

On the question of agency: Cases cited in opinion.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of violating the local option law, his punishment being assessed at a fine of $100 and thirty days imprisonment in the county jail.

The State's evidence is, in substance, that the State witness Moore gave appellant two dollars with which to secure him a quart of whisky. Appellant took the money and went away, subsequently returning with a quart of whisky, which he gave Moore. Appellant denied selling Moore the whisky. He admitted, however, that he took the money, went off and bought the whisky as an accommodation to Moore from a party named Woodward; brought the whisky back and gave it to Moore. Appellant proved a good reputation. The State further proved that shortly before the transaction a consignment of whisky, which seems to have consisted of four bottles, had been made to appellant, which was received at the express office. It was also shown that Woodward received one or more consignments of whisky, one in his own name and one in the name of Fleming. Appellant testified that the whisky which was shipped to him or in his name was for Woodward as an accommodation to Woodward, who said he had been shipping in some whisky and did not want to attract attention, so he induced appellant to let him make this shipment in his name. Woodward did not testify on the trial. Without going into details, this is the substance of the case.

Several bills of exception were presented to the judge, which are marked by him refused. There is filed an affidavit made by J. E. Shropshire, one of the attorneys for appellant, which was signed and sworn to on 27th of June, 1911. This affidavit is attached to and made a part of the motion of appellant's attorneys, Shropshire & Brown, asking the court to consider five bills of exception, which were refused by the court. It is stated in the motion filed here for this purpose, that during the trial these bills were properly prepared and immediately after the trial of the case, and within two days, and before adjournment of court, presented to counsel for the State, who refused to read or act upon them. They were then presented to the

court and the court would not act on the bills for some time, but finally marked all of them "refused." The judge failed to file any bills of his own in lieu of appellant's tendered bills, and that as the matter was presented appellant was not required to resort to bystanders to prove up bills of exception. That he had done all in the matter that was required of him by law. That the court never suggested any errors or corrections in any of the bills, except bill No. 1, as first prepared. In regard to this bill he suggested the proceedings were not stated in the exact order in which they occurred, and the bill was then prepared to meet the suggestion of the court; that he still refused to sign it after the corrections were made. It is stated further that the refused bills are fair and correctly present the matters as stated in the bills. In connection with this appellant moves that this court consider the bills under the authority of Exon v. State, 33 Texas Crim. Rep., 467. In this connection he submits this proposition: Where appellant prepares bills of exception in time, presents them to opposing counsel and endeavors to get them acted upon by said counsel, then after which in time presents them to the court and endeavors to get action from the court on them, and the court refuses to suggest any errors in the bills so presented, and refuses to prepare other bills correctly setting forth the exception, but simply marks the bills refused, that in such event the Court of Criminal Appeals will consider the bills presented by appellant, and include in the record of the cause the bills without the approval of the court. Exon v. State, supra, is cited as authority for the proposition. The affidavit in this connection, and attached to this motion, is made by one of the attorneys, J. E. Shropshire, and is, in substance, as follows: That he was one of counsel representing appellant in the trial of the case in the County Court of Mc-Culloch County; that he and his partner reserved and prepared the bills of exception found in the transcript; that each of said bills to the best of his knowledge and judgment fairly, honestly and truthfully portrays the matters and rulings of the court mentioned in each bill. That each of the bills of exception marked refused by the court was prepared during the trial or immediately thereafter and after being drawn were promptly presented to the county attorney of the county who conducted the prosecution, and that affiant repeatedly urged said county attorney, and J. A. Adkins, who assisted in the prosecution, to examine and pass upon the bills; that the county attorney plead a press of business as an excuse for delay, and Adkins persistently replied that there was no rush about the matter; that there was plenty of time. In answer to this procrastination, affiant urged opposing counsel, the county attorney in particular, that it was important to pass upon the bills while the matter was fresh in their memory, because they had no stenographer, and affiant felt sure they could agree upon the bills. Finally, about thirty-six hours after the trial, Mr. House, the county attorney, told affiant to deliver all

the bills to him, House, in the afternoon, promising to pass upon them by the time court convened the next day. That affiant delivered the bills to Mr. House as requested and urged him to pass upon them. The following forenoon affiant asked Mr. House if he had examined the bills; he said that he had not. Affiant again urged him to inspect them and left them with him until the next day, and asked him about them again, and he then handed the bills all back to affiant, declining to pass upon them. That affiant then took the bills and presented them to the county judge of McCulloch County, and explained to him that affiant could not get either of the attorneys for the prosecution to act on the bills, and asked the county judge to do so. The county judge refused to act on the bills, and after urging him a number of times to do so after this, and his refusal to consider or act upon said bills, affiant filed the motion found in the transcript on pages 29 and 30 of the record, and had the clerk of the court to file the bills of exception. Later when the court was not employed affiant asked the court in a courteous manner, a number of times, to act upon his motion. He simply said he would not do it; that he did not care how many motions affiant filed, and got up from the bench and stepped down among the people in the courtroom, and as he did so remarked: "Shropshire & Brown can not disturb my rest at all." Affiant asked the judge a number of times later, while he was not engaged, and while at the courthouse, and court was in session, to either pass upon the motion or the bills of exception, but he would postpone action. Later, and at a time when affiant was not present, the judge marked the bills refused. Affiant does not and did not know when the court acted upon the bills in this manner. That the court has never prepared any bills of exception, or filed any such bills prepared by himself or the attorneys representing the State. The court did not suggest any corrections in any bill except as to bill No. 1 as hereinafter mentioned. That when the trial was in progress, the defendant being on the stand testifying in his own behalf, was asked by the attorneys for the prosecution as to his statement before N. G. Lyle, the attorneys for the defense vigorously objected to the court permitting said statement to go in evidence, as shown by bill of exceptions No. 1, on pages 16 to 20 of the record. That while the attorneys were arguing and urging the defendant's right to exclude said sworn statement, which was being done in a courteous manner, the county judge became very angry, or at least appeared to do so, and remarked in the presence and hearing of the jury, and a large audience that he was getting "damned tired of the contentions of attorneys for the defense," and it then being about 10:30 o'clock a. m., the judge arose from the bench and announced that he would adjourn the court till 1:30 o'clock p. m., and then and there walked down from the bench among the audience and out of the courtroom cursing and swearing as he went. That when the judge made the announcement of his intention to adjourn till

1:30 p. m., the county attorney and affiant both protested, stating that they wished to proceed with the trial, but the judge paid no attention to said protests, and adjourned as above indicated till 1:30 p. m. From the court's extraordinary conduct and remarks affiant believed he would overrule the contentions of defendant in the matters; and by the time court convened had prepared and properly presented to the attorneys for the prosecution, and the judge, a bill of exceptions covering the same matters and points covered by bill of exceptions No. 1 above referred to. The State's attorneys made no objection to the bill as presented, but the county judge refused to approve same, because, he said, the matters therein recited occurred in a slightly different order from that indicated in the bill. Affiant then offered to change the bill to meet the court's approval, stating that he could do so in a few moments time; but the court refused to permit him to do so, stating that he would not pass upon it during the trial. The court then came down from the bench and remained among the spectators and audience, and jury about ten minutes, laughing, joking and talking with them, and then resumed his seat and proceeded with the trial. After this defendant's counsel prepared bill of exceptions No. 1, as found in the record, making it to conform to the suggestions of the court in criticising the former bill on the point, and presented it with the other bills marked "refused" as indicated herein, but the court refused to approve them, or to suggest any errors in them, or to prepare and have filed other bills in lieu of them. That affiant has done everything that he could do to get the trial court to allow him proper bills of exception covering the points involved in each bill of exceptions found in this record and marked refused by the court."

Under the authority of Exon v. State, supra, we are of opinion that appellant has brought himself within the rule laid down in that case, and is entitled to have his matters reviewed and the bills considered. It was not necessary, under the circumstances, for him to secure bills from the bystanders. The court refused to allow the bills and gave no reason for it and prepared none in lieu of them. Without commenting further upon the matter, we are of opinion under the authority cited that the bills should be and will be considered.

Bill of exceptions No. 1, in substance, shows that after the alleged sale, and perhaps the same evening, the officer took appellant before what is termed "the court of inquiry," and had him to testify under oath, that appellant is a negro and the alleged purchaser a white man, that the marshal of the town took appellant before Lyle, the justice of the peace; he was sworn, and required to testify to a lot of matters which were used against him upon the trial. Quite a number of objections were urged to this conduct, and among others, that he was under arrest and restraint, and the matters were not reduced to writing as required by the statute. It was not a voluntary statement made before an examining trial, for this was a court of

inquiry only; that appellant was not warned as required by the stat-
ute, and because the evidence was calculated to injure him before
the jury, and it was incompetent, irrelevant and immaterial.    At
this juncture the court retired the jury to consider the question as to
whether or not he would admit the testimony.    It developed during
this examination as testified by defendant:  That in the evening
after he had delivered the bottle of whisky to Moore, Paul Sheridan,
the city marshal, rode up to defendant near the south courthouse
gate on the public square and accosted defendant in substantially
the following language: "Jim, I have been looking for you all
evening.    Go on into the courthouse there, they want you."    That
Mr. Sheridan then got off his horse and went with defendant into the
office of N. G. Lyle, justice of the peace, and there in the presence
of C. C. House, the county attorney, N. G. Lyle, justice of the peace,
Paul Sheridan, the city marshal, Oscar Latta, deputy sheriff, and
Jim Anderson, deputy marshal, began to question defendant concern-
ing the procuring of said whisky and the sale of same.    That at said
time the said N. G. Lyle, justice of the peace, remarked to defendant
that he would put defendant in jail and keep him there as long as
he wanted to.    That about that time defendant proposed to said
officers to give them information and to show them where he had
gotten the whisky if someone of them would go with him and let him
purchase another bottle of whisky, and then and there in that con-
nection the defendant offered to divulge the name of the party who
sold the whisky if the officers would give him a chance.    That at that
juncture the said Paul Sheridan ordered defendant to shut his mouth,
refused to go with him, and told defendant he had to tell it then.  ·
That immediately after he made his statement in said court of in-
quiry the said Paul Sheridan placed handcuffs upon defendant's
hands and took him and placed him in jail, and locked him up.
That from and after the time that Mr. Sheridan first accosted de-
fendant near the south gate of the courthouse yard, as aforesaid,
the defendant thought and believed that he was continuously under
arrest, until he was placed in jail, and thought and believed that he
was under arrest at the time he was asked said questions and made
said statements in said court of inquiry.    That at the time he was
required to answer said questions and make said statements in said
inquiry court he was sworn and was required to make said state-
ments under oath, that he did not think he was warned that he did
not have to make any statement at all, etc.
    Thereupon the State introduced the said Paul Sheridan, who tes-
tified that at the time he met the defendant near the south gate
of the court yard, that he told defendant that he had a subpoena
for him to go into the office of N. G. Lyle, and that he, Sheridan,
accompanied the defendant into the said office and stayed there with
him during the examination of defendant in said inquiry court, and
after said examination got a warrant for the arrest of the defendant

and took him and handcuffed him and carried him to jail. That he handcuffed him because he did not want him to get away, and did not want to have to hurt him or kill him. That he had known the defendant a good while, but had never known of his doing any violence or trying to escape, but handcuffed him because he did not want to take any chances. That after the court of inquiry was over he kept the defendant in the sheriff's office for about three quarters of an hour before he took him to jail.

At this juncture the jury were brought back into court and resumed their places in the jury box. Defendant was placed on the witness stand and compelled to testify before the jury that he had testified in said court of inquiry before N. G. Lyle, justice of the peace, on the occasion aforesaid, that he did not know the name of the negro from whom he purchased the whisky, and was made to further admit that said testimony so given before N. G. Lyle was false, and was compelled to testify before the jury that he had sworn falsely about such matter on said occasion. To the introduction of all of which evidence appellant urged his exceptions. This action on the part of the court was clearly erroneous under all the authorities so far as we are aware. Appellant could not be made to give evidence against himself as guaranteed by the Bill of Rights, article 1, section 10, of the Constitution. See Acts of 1907, amendatory of article 790 of the Code of Criminal Procedure; Wood v. State, 22 Texas Crim. App., 431; Calloway v. State, 116 S. W. Rep., 576; Gilder v. State, 35 Texas Crim. Rep., 360; Wright v. State, 36 Texas Crim. Rep., 432. The Wood case, supra, is the leading case in this State, holding that where a party is compelled to or does testify under circumstances herein detailed, such testimony can not be used against him. That case lays down the proposition that where a party is examined as a witness in a proceeding before a magistrate's court or a coroner's inquiry and is charged or suspected of the crime under investigation, and is aware that he is so charged or suspected, his testimony before the said investigation court can not be received against him upon his trial for that offense. That appellant was brought within the rule laid down in Wood case will not admit of debate. He was taken by the constable, carried before the officer, put under oath in a court of inquiry to investigate the very crime or the very offense or transaction about which the conviction occurred in this case, and it would seem from the record that this was the only matter about which appellant was investigated or required to testify. This matter could not be used against him as a confession, because the statute requires that it must be in writing, and in accordance with the terms of the amended statute on this subject. That he could not be used as a witness against himself is guaranteed by the Constitution. The record shows he was not warned, therefore, from any standpoint this evidence was inadmissible. Where a party is under arrest or in custody, not being cautioned as the statute re-

quired, his testimony is incompetent. That he was suspected of and arrested for the offense of which he stands convicted is manifest from the whole transaction, and if we go to the statement of facts we find that the bill of exceptions recites the matter in unison with the evidence adduced on the trial. The bill of exceptions reserved should be considered and requires a reversal of the judgment.

There are some matters reserved in other bills, but in view of the disposition of the case we will not discuss them further than to say we trust upon another trial that in the argument counsel for the prosecution will be more guarded in their remarks.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*