JOE ROSA v. THE STATE.

No. 5612. Decided February 18, 1920.

1.—Theft from Person—Bills of Exception—Cross-examination—Remarks of Counsel—Rule Stated.

While it is the State's right to prove by legitimate means that the defendant had been indicted and convicted of a felony or a misdemeanor in-

volving moral turpitude, yet where the questions are not asked with the expectation of receiving an affirmative answer, nor with the view of introducing legal evidence, but the purpose was to get before the jury by *innuendo* the view that the defendant was a confirmed criminal, and no evidence was introduced by the State to contradict the denial of defendant touching his connection with the various transactions inquired about, the same is reversible error. Following: Spangler v. State, 41 Texas Crim. Rep., 424, and other cases.

### 2.—Same—Bill of Exceptions—Practice in District Court.

Where the trial judge files a bill of exceptions after it is handed to him by defendant's counsel and marks it "refused" the appellant is entitled to have the same considered. Following: Exon v. State, 33 Texas Crim. Rep., 461, and other cases.

### 3.—Same—Discrediting Witness—Charge of Court.

The evidence that defendant had at some previous time been arrested for arson, was available alone for impeaching purposes and the court should have so instructed the jury. Following: Jackson v. State, 33 Texas Crim. Rep., 288.

Appeal from the Criminal District Court of Tarrant. Tried below before the Hon. George E. Hosey, judge.

Appeal from a conviction of theft from person; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Graves & Houtchens,* for appellant.—On question of bills of exception: Butler v. State, 64 Texas Crim. Rep., 482, 142 S. W. Rep., 904; Exon v. State, 26 id., 1088.

*Alvin M. Owsley,* Assistant Attorney General, for the State.

MORROW, JUDGE.—The appellant is condemned to confinement in the penitentiary for five years for the offense of theft from the person.

While Keene, the injured party, was in a place of amusement, someone attempted to extract from his hip-pocket his purse containing some money. The transaction occurred in the aisle while Keene, with some companions, was going to a seat. They had been standing awaiting the movement of the crowd, and as they started forward Keene felt a twitching in his hip-pocket, and on this occurring a second time he seized appellant's hand, which at the time, according to the witness, was not more than three inches away. A companion of the prosecutor corroborated him to the extent of saying she saw appellant behind Keene, leaning as though hugging him, apparently having his hand under his coat. The appellant testified, and denied his identity as the offender; claimed that he had a considerable sum of money of his own in his pocket, and was employed in a big hotel in Dallas as cook. On cross-examination

he said that his name was Joe Rosa, not Francisco Romano; that he did not use different names in various parts of the United States; that he had been in Hoboken; that he had not been convicted of a felony; that he was fifty-three years of age; that some eight years before he had been arrested in New York; that he then gave his name as Joe Rosa, and not as Pascual Miguella.

The appellant on trial reserved several bills of exceptions to the manner of conducting the trial. These bills were prepared by counsel for the appellant, delivered in due time to the district judge who tried the case, who marked some of them "approved" and some "refused," and filed them with the clerk. They were not incorporated in the record, but were brought up on motion for *certiorari*. In one of the approved bills complaint is made of the action of the assistant county attorney in conducting the cross-examination of the appellant while he was testifying as a witness. It appeals from this bill that the questions and remarks of counsel for the State were as follows:

"You was convicted in Hoboken of a felony and served a term in a penitentiary, didn't you? You was convicted and served a term in the penitentiary in New York? I will ask you if you wasn't arrested on March 24, 1914, in New York for grand larceny, for stealing, you swear to this jury you wasn't? I will ask you if you wasn't arrested in Hoboken on the 3rd day of December, 1914, for being what they call a con man? I will ask you if you didn't serve a term in the penitentiary after having been convicted in the city of New York? I will ask you if you wasn't convicted in New York on May 11, 1911, and sent to the penitentiary there for a felony? I am asking you if you wasn't convicted in New York State in the city of New York, and sent to the penitentiary from there, for a felony? I will ask you if you didn't use the name in New York of Francisco Romano? What name did you give when you was arrested here? Didn't you give another name? What name did you give this man here? I want to ask him one more question if the Court pleases and Mr. Tolbert has gone to get the information upon which I want to base that question. I will ask you didn't go by the names in New York of Pasquel MiQuella and another time in New York you went by the name of MiQuella Pasquel? Since he has answered these questions that way, so there would be no mistake that he knows what he is answering, because I want to get it in the record straight. You talked a little better than this in the detective headquarters. There are some important matters we have asked about here that he could say that he did not understand what the questions were and apparently he has answered no to them, we want him to understand what he is answering. The Court then interposed and said "If either of you gentlemen know where an interpreter can be gotten."

In another one of these bills it appears that "while undergoing cross-examination the appellant was forced to answer certain questions relative to purported former convictions, certain purported Bertillon measurements, and purported photographs, which were presented to him in the presence and hearing of the jury," which questions and answers are set out.

The evidence set out in this bill verifies the correctness of the statement above which is quoted. From this bill it appears that the witness was repeatedly asked if he had not been in the penitentiary at various places and times; if he had not been arrested for various charges; if certain pictures that the county attorney exhibited were not the appellant's photographs; if he had not been imprisoned in certain places; if he had not gone under different names in different localities; and in this bill the following question was asked:

"I want to ask one more question, if the court please, and Mr. Tolbert has gone to get the information upon which I will base this question. I will ask you if you did not go by the name in New York of Pascual Miguella, and another time in New York you went by the name of Miguella Pascual, just twisted it around, didn't you?" Answer: "No, sir." The appellant having assumed the attitude of a witness in his own behalf, it was the right of the prosecution to prove by legitimate means that the appellant had been indicted and convicted of a felony, or of a misdemeanor involving moral terpitude. The counsel for the appellant insists, and maintained during the trial, that the questions were not asked with the expectation of receiving an affirmative answer, nor with the view of introducing legal evidence to establish the criminal incidents referred to in the cross-examination; but that the purpose and effect of the testimony was to get before the jury by *innuendo* the view that the appellant was a confirmed criminal. No evidence was introduced by the State to contradict the denial of the appellant touching his connection with the various transactions inquired about, although the prosecuting officer at one time in the presence of the jury intimated that some such evidence was at hand—at least he remarked to the court that he had sent his assistant to obtain data upon which to predicate his inquiry. Possibly in ruling upon the examination the court assumed that the proceedings would be followed by proof tending to establish the appellant's identity with the criminal record and acts which by his questions the prosecutig officer gave the jury to understand were in his possession, and some of which he exhibited to them during the examination.

The appellant was a stranger and a foreigner, apparently imperfectly acquainted with the English language in which the examination was conducted. He was charged with a serious offense, and availed himself of the privilege accorded by statute to testify

to facts supporting his claim that he was innocent. His evidence conflicted with citizens of the State, whose evidence the jury might have accepted as against his, even if he had not been discredited by the *innuendo* of the prosecuting officers described. The right, however, of one accused of crime to have the jury pass upon the truth of his statements as a witness cannot legally be abridged by creating prejudice in the minds of the jury by questions and the exhibition of criminal records, or other discrediting matters, when the State is without evidence with which to sustain the impeaching facts. Our law contemplates a fair trial. C. C. P., Art. 743. The jury doubtless assumed from the proceedings disclosed, but not by the evidence, that the appellant was a confirmed criminal, and assessed his punishment at confinement in the penitentiary for three years in excess of the minimum punishment. Touching this matter a learned text writer says:

"It is scarcely necessary to suggest that, in every judicial trial, a party must present his evidence either by the testimony of witnesses who are under oath, by the exhibition of documents which are competent under the rules of evidence, or by the exhibition of such material objects as are connected with the *res gestae* and speak with reference to the issues on trial. He cannot be permitted to present his evidence in the form of the argument of his counsel to the jury, who is not sworn to speak the truth as a witness in the particular case. All courts, therefore, unite upon the conclusion that where counsel, in their argument to the jury, make statements of prejudicial matters which are not in evidence, it will afford ground for a new trial, unless the error is cured before the cause is finally submitted to the jury, in the manner stated in the preceding paragraphs."

That this rule may be infringed to the prejudice of the accused in the examination of witnesses has been often recognized by this court and those of other states. Spangler v. State, 41 Texas Crim. Rep., 424; Downing v. State, 61 Texas Crim. Rep., 519; Grimes v. State, 64 Texas Crim. Rep., 64; Hinton v. State, 65 Texas Crim. Rep., 408, 144 S. W. Rep., 617; Cooper v. State, 66 Texas Crim. Rep., 441, 147 S. W. Rep., 273; Shed v. State, 68 Texas Crim. Rep., 373, 153 S. W. Rep., 125; Clements v. State, 69 Texas Crim. Rep., 372, 153 S. W. Rep., 1137; Cyc. Vol. 12, p. 572; Hodges v. State, 73 Texas Crim. Rep., 398, 166 S. W. Rep., 512; Holder v. State, 58 Ark. Rep., 473; 25 S. W. Rep., 279; People v. Mullings, 83 Cal. Rep., 138, 17 Amer. State Rep., 223; State v. Forsythe, 99 Iowa Rep., 1; 68 N. W. Rep., 446; Cargill v. Commonwealth, 13 S. W. Rep., 916; Gale v. People, 26 Michigal Rep., 156; State v. Pendible, 165 Missouri Rep., 329, 65 S. W. Rep., 559. See interesting note on the subject 100 American State Reports, p. 689. It may also be transgressed by the exhibition to the jury of documents or articles calculated to injure the accused and not ad-

missible in evidence. Cyc. Vol. 12, p. 572; note 67 and cases cited; Hollingsworth v. State, 82 Texas Crim. Rep., 340; Dunn v. State, 85 Texas Crim. Rep., 299, 212 S. W. Rep., 511; Roberson v. State, 83 Texas Crim. Rep., 238, 203 S. W. Rep., 355.

In one of these cases it is said that where the mere putting of a question conveys to the jury information which cannot be properly laid before them, thus tending to render the trial unfair and illegal, a verdict so obtained stands exactly on the same basis as if the illegal evidence were introduced by error in the ruling of the court. An application of this principle was made in Wyatt v. State, 58 Texas Crim. Rep., 115.

Some, though not all, of the bills of exceptions to which we have referred are those filed in time but marked ''Refused.'' The procedure to be followed by the trial judge when a bill of exceptions is prepared and presented to him within the time allowed by law for filing it is provided by statute. Exon v. State, 33 Texas Crim. Rep., 461; Thomas v. State, 83 Texas Crim. Rep., 325. Where a bill is prepared by the appellant, and presented to the trial judge in time, it is his duty, if he disagrees from its correctness, to file with it a bill which presents the true record. This affords the appellant the opportunity to prepare and file a bystander's bill; but when the trial judge fails to adopt such procedure, and files a bill marked ''Refused,'' the appellant is entitled to either have the bill considered or to have a reversal because it is denied him. It has been the practice under such circumstances to consider the bill. Butler v. State, 64 Texas Crim. Rep., 482, 142 S. W. Rep., 904; Exon v. State, 33 Texas Crim. Rep., 468; Belo v. Wren, 63 Texas Rep., 728; Tyson v. State, 14 Texas Crim. App., 390; Bell v. State, 2 Texas Crim. App., 215; Fredericson v. State, 44 Texas Crim. Rep., 290.

The admission drawn from appellant, that he had at some previous time been arrested for arson, was available alone for impeaching purposes. The court should have so instructed the jury. Jackson v. State, 33 Texas Crim. Rep., 288; and other cases collated in Branch's Annotated Texas Penal Code, sec. 188. It appears from the approved bill that an exception was reserved to such failure.

The errors pointed out require a reversal of the judgment, which is ordered.

*Reversed and remanded.*