## MONTA WILSON v. THE STATE.

No. 5832.   Decided October 13, 1920.

**1.—Murder—Continuance—Want of Diligence—Practice on Appeal.**

The burden is on defendant to show the use of necessary diligence, and where  he did not meet these requirements the application was correctly overruled; besides to the motion for new trial, there was no affidavit by the absent witness or anyone else as to the facts alleged in the application, and there was no reasonable probability of procuring the witness and if she had been procured that her testimony would likely produce a different result.

87 Tex—40

### 2.—Same—Bills of Exception—Practice on Appeal.

Where the record on appeal showed that the bills of exception presented to the court were without foundation in fact, that is, the court certified that no exceptions were taken to the ruling of the court, at the proper time, and in the absence of a bystander's bill, it was not incumbent upon the trial court to file a bill made up by the court. Distinguishing Rosa v. State, 86 Texas Crim. Rep., 646. Following Moore v. State, 47 Texas Crim. Rep., 410, and other cases.

### 3.—Same—Argument of Counsel—Practice on Appeal.

In the absence of a written instruction by the defendant to disregard the argument of State's counsel, there was no error in the instant case.

### 4.—Same—Requested Charge—Right to Go Armed—Adulterous Intercourse.

Where, upon trial of murder, the evidence did not call for a charge to the effect that the defendant had the right to arm himself, etc., or that deceased and the wife of defendant had engaged in adulterous intercourse, there was no error in refusing the requested charges thereon.

### 5.—Same—Murder—Charge of Court—Justifiable Homicide—Adultery.

Where, upon trial of murder, the defendant objected to the charge of the court in submitting murder because the facts show justifiable homicide arising from the adulterous conduct of deceased with defendant's wife, but the evidence did not raise these issues, there was no reversible error, and the evidence being sufficient to sustain the conviction for murder, it will not be disturbed.

### 6.—Same—Rehearing—Practice on Appeal.

Where appellant, in his motion for rehearing, urged that this court was in error in holding that defendant's bills of exception could not be considered, but it appeared from the record that the trial court had certified in varying language that no such objections were made, and no such bills of exception were taken, and that such proceedings were not shown in the record, there was no reversible error.

### 7.—Same—Rule Stated—Bills of Exception—Practice on Appeal.

Where the trial court certified that no such bills of exception as defendant contended for were taken, and that no objections were heard, and nc such proceedings were had, and therefore, such bills of exception were refused, such certificate must be accepted by this court in the absence of a showing to the contrary. Following York v. State, 57 Texas Crim. Rep., 484, and other cases.

Appeal from the District Court of Tarrant. Tried below before the Honorable Geo. E. Hosey.

Appeal from a conviction of murder; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Graves & Houtchens,* for appellant.—Cited cases in opinion.

*Alvin M. Owsley,* Assistant Attorney General, for the State.—On question of refusing application for continuance: Stacey v. State, 177 S. W. Rep., 114; Johnson v. State, 140 id., 347.

LATTIMORE, JUDGE.—Appellant was convicted in the Criminal District Court of Tarrant County, of the murder of Thurmond Sexton, and his punishment fixed at five years in the penitentiary.

Practically the undisputed evidence shows that a number of parties were riding in an ordinary wagon along a street in the city of Fort Worth, on the 30th of May, 1919. Deceased, who owned the wagon and team, was driving, and with him on the spring seat was one Shan Roberson. Just in their rear was another spring seat, on which was Mrs. Roberson and Mrs. Wilson, wife of appellant, the latter holding in her arms a four-year old child, born to her and deceased before her marriage to appellant. Behind this second spring seat, appellant was standing in the wagon, and while in these relative positions, appellant drew a pistol and shot deceased three or four times, all the bullets entering from the side or rear, and from which wounds the death of deceased resulted some weeks later. Aside from the evidence of appellant, all the other eyewitnesses who testified about the facts of the tragedy, said that deceased made no motion and said nothing to appellant before he was shot. Appellant himself testified that just before he shot deceased, deceased told the man Roberson to "take the team to Cora's, and that he, deceased, would take Laura to the rooming house," and that after making this statement, deceased bent forward; that he knew there was a hammer on the floor of the wagon in the front corner of the bed, and that he drew his pistol and shot deceased. Deceased made a statement before his death, in which he said he did and said nothing to appellant to provoke the assault. Appellant made a statement soon after the shooting, in which he stated that he made up his mind on the day before the homicide, that he was going to kill deceased, and that he did kill him because deceased had broken up his family. Appellant's explanation while a witness, of his motive for the shooting, was that he was actuated by self-defense and the rage arising from the conduct of deceased toward the wife of appellant.

Appellant moved for a continuance, on account of the absence of Ruth Weilman. It appears that the residence of said witness was unknown, but the belief is expressed in the application, that such residence and her then location, were somewhere in the State of Iowa. No subpoena or copy thereof was attached to said application, nor was any statement made as to when any subpoena was issued. It was only generally stated that appellant was informed on October 17, 1919, that a Miss Ruth Weilman had stated that she was

an eyewitness to the killing, and would testify to the facts which he states in his application, as expected from her; and that he immediately caused a subpoena to issue to Tarrant County for said witness. Irrespective of the date of said process, same was returned by the sheriff on the 20th day of said month, stating that said witness was in Bexar County, Texas. In a contest filed objecting to said continuance, appears the statement that the subpoena was returned on said date. No alias, subpoena, or other process was issued for said witness, although the case was not given to the jury until October 24. It is well settled that the burden is on the appellant to show the use of necessary diligence, and the facts above enumerated do not seem to us to meet such requirements. Not only was no subpoena issued to Bexar County on or about the 20th, but no other effort prior to the conclusion of said trial, to locate said witness in Bexar County, appears in the record. There are other matters affecting our disposition of this question of continuance. The trial was had late in October, 1919, and the motion for new trial was not acted upon until January 3, 1920. No affidavit, or statement of said witness, or of any person who had ever talked to said witness, or knew first hand what facts said witness would or could testify to, appears in connection with the motion for new trial, or otherwhere in the record. In his said motion, as excuse for failure to support this ground thereof with some character of affidavit as to where said witness was, or what her testimony would be, appellant again states in general terms his efforts to locate her, which were without success. While it was averred in said application that a young lady was walking on the sidewalk some thirty or forty feet from the wagon, and that she was an eyewitness to the transaction, we observe that there is no reference to the presence of any such person anywhere in the statement of facts. Said application states that defendant was informed about September 15th, that a daughter of an officer at Camp Bowie was an eyewitness, but that he could not learn her name or address; that on October 17th he was informed that Miss Ruth Weilman had stated that she was an eyewitness, and had related the facts seen by her, as stated in said application, but no information was obtained as to the address or whereabouts of said young lady further than that she was believed to live in Iowa. The expectant testimony attributed to the absent witness, appears to be that she would swear that she was looking at the parties, and saw deceased turn as if speaking to those behind him, and then bent forward and reach under the seat. That at that instant the accused drew a pistol and fired the fatal shot. In this connection, another settled rule is that in passing on the merits of applications for continuances, this Court will look to the whole record to ascertain if the facts stated as expectant, appear likely to be true, and also if there be a reasonable probability of procuring same, and that if same be procured, it would likely produce a different result. Applying these

rules, we note that of the various eyewitnesses present when the homicide took place, appellant is the only one who undertook to testify to any word or motion of deceased just prior to the time the shooting took place. Mr. and Mrs. Roberson positively denied any such facts, and the wife of appellant, who was introduced as a witness for him, did not testify to any such facts.

Appellant testified that on their way to town that afternoon, a distance of some five or six miles, a tire on one of the wheels got loose, and that either deceased or Roberson asked him to fix it, and he got a hammer and tried unsuccessfully to knock the tire back on; that deceased got out of the wagon, took the hammer from him, knocked the tire back, dropped the hammer in the front corner of the wagon, and all parties got back in their places. We think the trial court correctly refused to continue the case, because no sufficient diligence was shown, and also because of the fact that if efforts from May, 1919, to January, 1920, were unavailing to even locate a witness whose expectant testimony has never gotten beyond the hearsay opinion stage, a court could hardly be expected to delay for any such matter so indefinite and uncertain. We are also of opinion, from the record, that it is altogether improbable that such witness would testify as stated, or that such testimony, if given would have changed the result. If deceased had desired to assault appellant with a hammer, it would appear reasonable to believe that his best opportunity was afforded when the two were on the ground, and the hammer in the hands of deceased. No quarrel arose thereafter, and no threats were made; and as far as human reason can see, no occasion arose for an unarmed man, in his shirt sleeves, on a public street—as the testimony showed deceased to be—would reach for a hammer lying on the floor of a wagon bed, under a spring seat, for the purpose of getting same and either throwing it at a man in the back of the wagon, or climbing over the wagon and assaulting him with said hammer. The record makes it clear that appellant was with deceased from some time before the noon meal was eaten until the time of the homicide, at about three o'clock p. m.; that the parties had hitched up the wagon, had all gotten in the wagon, and had ridden a number of miles. In his statement of the matter made the day of the homicide, appellant made no mention of any hammer or motion of deceased of any kind before the shooting, but made the plain statement that he shot him because he broke up his family.

Appellant complains of the trial court's refusal of a number of his bills of exception, and claims that he was thereby deprived of same, which was error. The case of Rosa v. State 86 Tenn. Crim. Rep. 646, is cited by appellant. Examining the opinion in said case, we find the following statement: "Where a bill is prepared by appellant and presented to the trial court in time, it is his duty, if he disagrees with its correctness, to file with it a bill which presents the true record." This statement evidently was based upon the hypothesis that no bill

of exceptions would be presented to the trial court which was not based on facts transpiring in the progress of the case. This court did not have in mind any such proposition as that if a bill of exceptions be presented which was without foundation, the trial court would be compelled to make up a bill. In the case mentioned, the bills of exceptions were merely marked "refused," and were then filed without explanations or statements attached thereto. Turning to the record, and the bill of exceptions complained of as refused in the instant case, we find that appellant's bills numbered 2, 3, 4, 5, 6 and 7 were filed, and upon each of them appears the substantial statement of the trial court, to the effect that the bills were refused because no such proceedings were had in the trial court, and no such bills of exceptions were taken. There is a vast difference between the principle thus involved and the rule laid down in the Rosa case, and those other cases where such bills are merely marked "refused," and no explanation appears, and no bill prepared by the court, or bystanders, appears. In the event the bills were merely marked "refused," without explanation or qualification, and same was under such circumstances as to fairly call for a bill prepared by the trial court, or else for some explanation, this Court would regard such refusal as purely arbitrary, and we would not lend our consent to such action as would deprive any litigant of the right of bringing clearly before the appellate court his objections. When there are qualifications or explanations of the trial court appended to the bills, as appears to be the case in this record, and no exceptions thereto are taken or presented in any proper manner, we would be governed in our consideration of such matters by such explanations and qualifications. Where bills have merely been marked "refused," and thus appear in the record, we have considered affidavits, but not so when such affidavits are only in contradiction of explanation or qualification of such bills. Moore v. State, 47 Texas Crim. Rep., 410; Rabb v. Goodrich & Son, 46 Texas Civ. App., 541, 102 S. W. R., 910; Cyphers v. State, 67 Texas Crim. Rep., 504, 150 S. W. R., 187. We regret our inability to consider any of said bills of exceptions, but the trial court certifies thereon that no such exceptions were taken, and no such bills reserved, and the contrary is not made to appear here by any bystander's bill, or other character of attack, except by the affidavit of appellant's attorney.

We think no error appears from the matter contained in bill of exceptions No. 8. It is the duty of appellant, if he objects to the argument of State's counsel, to ask in writing an instruction to the jury not to consider the same. This was not done.

Appellant's special charge, to the effect that he had the right to arm himself, if deceased had made threats against him, which appellant feared might be executed, was properly refused, because there was not sufficient evidence calling for such charge; and this is also true of the matter appearing in bill of exceptions No. 10. In regard

to the latter, there was not a particle of evidence that the deceased and the wife of appellant had engaged in adulterous intercourse with each other after the marriage of appellant with the woman.

Appellant objected to the instruction in the main charge, submitting murder, stating that the State's testimony had eliminated the question of murder by showing that deceased enticed away the wife of appellant, and that appellant when he found them, was justified in believing that they had been guilty of adultery; and that the shooting resulted from sudden passion, all of which appears in appellant's bill of exceptions No. 11. We find ourselves unable to agree with any of the fact conclusions stated in said bill; and this is true of the contentions made in his twelfth bill of exceptions, wherein he complains of the failure of the main charge to submit justifiable homicide, on the theory that he had taken his wife and deceased in adultery.

We have carefully gone over the various contentions in this case. The jury has given appellant the lowest penalty for murder, when under the evidence they might have given him a great deal heavier punishment.

We have found no error worthy of reversal, and the judgment of the trial court is affirmed.

*Affirmed.*

ON REHEARING,

October 13, 1920.

LATTIMORE, JUDGE.—In his motion for rehearing, appellant urges that this Court was in error in holding that we could not consider certain bills of exception, upon which the trial court had noted in varying language, that no such objections were made, or no such bills of exception were taken, or that such proceedings were not shown in the record. It is again insisted that under the case of Rosa v. State, 86 Texas Crim. Rep., 646, 218 S. W. Rep., 1056, we should have considered said bills.

We have again reviewed said decision, and this matter, in view of the able and insistent argument of appellant, and are unable to come to a conclusion variant from that expressed in our opinion herein. Differences between trial courts and attorneys as to what proceedings were had, are possibly unavoidable, but our practice gives to one accused, and who uses diligence, every opportunity to have the record correct. He may take his bill promptly to every action of the trial court, and have it then and there so definitely settled as to obviate any probability of any misunderstanding. Official stenographers are now used in all felony trials in this State, and there is very little opportunity for misunderstanding. If an accused has not

seen fit to avail himself of the official stenographic record, which ought to show exactly what his object and exception was, he should at least present to the trial court a bill so embodying the substance of the matter as that in fairness, and in compliance with the direction of our statute, the trial judge may be able to compare the same with the stenographic account of what transpired, and may decline to approve such bill, and file in lieu thereof a correct one; but when the trial court certifies that no such bills were taken, or that no such objections were heard, or that no such proceedings were had, then this Court necessarily reposes confidence in the official certificate of the judiciary, and until, in some legal way, it is made to appear that the same is not correct, this Court has uniformly declined to accept the affidavit of the appellant, or his counsel, as a sufficient attack upon the truth and correctness of such certificate. We again state that this character of certificate by a trial judge is altogether different from a simple endorsement upon a bill that the same is refused, without explanation or qualification.

In Clark's case, 67 Texas Crim. Rep., 38, 148 S. W. Rep., 801, we refused to consider a bill of exceptions which was refused by the trial court with the statement that no such ruling was made. When the court refuses bills and no effort is made to authenticate them as required by statute, this court will not consider them. York v. State, 57 Texas Crim. Rep., 484; Galan v. State, 68 Texas Crim. Rep., 200, 150 S. W. Rep., 1171; McHenry v. State, 76 Texas Crim. Rep., 273, 173 S. W. Rep., 1020. Where the court refuses to approve a bill, with the statement that he did not remember such transaction, this court will accept that statement. Howard v. State, 65 Texas Crim. Rep., 25, 143 S. W. Rep., 178.

The motion for rehearing will be overruled.

*Overruled.*