[Crim. No. 430.   Fourth Appellate District.—February 24, 1938.]

THE PEOPLE, Respondent, v. MILES VICTOR BRENDLE,
Appellant.

Edgar G. Langford for Appellant.

U. S. Webb, Attorney-General, and Bayard Rhone, Deputy
Attorney-General, for Respondent.

BARNARD, P. J.—The appellant was convicted by the
verdict of a jury of a violation of section 288a of the Penal
Code and has appealed from the judgment.

The first point raised is that the court erred in re-
stricting the appellant's *voir dire* examination of prospec-
tive jurors.   During this examination, after stating that

there had been a previous trial in which the jury failed to agree, the appellant's counsel twice asked prospective jurors if it would have any effect upon their deliberations in this case if they should learn or hear that there had been a previous trial and that the jury had failed to agree. An objection to each of these questions was sustained, the court stating in the second instance that the general subject of inquiry was proper but that the form of the question was not correct. Thereupon, the court asked the jurors whether or not they had discussed this matter with any former jurors. He further stated: "It has been intimated here this morning that this matter has been tried" and then asked the question "Now does that fact create any impression in your mind as to the guilt or innocence of this defendant?" Subsequently, counsel for appellant stated that he wished to ask each of the jurors what effect, if any, knowledge that they might acquire during the course of this trial as to the standing of the other jury would have upon them. The court replied: "They may answer that," but suggested that all of the jurors collectively be asked that question. Counsel for appellant replied that he would ask the particular juror then being examined and thereafter refer back to what he had asked this juror. The court expressed approval of this plan and counsel for appellant asked the question: "Mrs. Savage, if you should learn the numerical standing of the jury upon the last trial of this case would that have any effect upon your verdict?" The answer was in the negative and counsel for appellant proceeded: "Q. The fact that that jury may have stood ten to two—". An objection then made was sustained and after a short argument the court said: "I think the matter has been sufficiently gone into and I am going to rule that we do not go into it any further."

The appellant contends that the court committed prejudicial error in refusing to allow his counsel "to interrogate the prospective jurors as to the effect of knowledge of the numerical standing of the jury in the former trial", citing *People v. Carmichael*, 198 Cal. 534 [246 Pac. 62]. It does not appear from the record that the jurors on the former trial had divided in the proportion of ten to two. Be that as it may, the uncompleted question to which an objection was sustained amounts merely to a repetition of the preceding question which was permitted. The court had asked whether

the fact that the case had been previously tried would create any impression in the minds of the jurors as to the guilt or innocence of the appellant. Counsel for appellant then stated that he wished to ask each of the jurors as to what effect, if any, knowledge as to the standing of the other jury would have upon them. Permission was given and such a question was then asked of and answered by the juror then under examination. No complaint is made that counsel was not allowed to refer back to that question in interrogating other jurors, and no record is pointed out which would sustain such a contention. A compliance with the rule laid down in the case referred to sufficiently appears.

■ The only other point raised is that the district attorney was guilty of misconduct in his closing argument to the jury, in which he said: ''Murphy told you that he heard a bumping sound against the wall of that bedroom and at the same time Murphy was hearing that Connell told you that from his post outside the door he heard the bed springs going up and down and then he heard this voice in speech; and Mr. Langford has accused Connell of making that up. Now if you think, Ladies and Gentlemen, that Connell and Murphy made any of this stuff up, then I will ask you to turn this defendant loose; because I wouldn't want to have— and I hope you believe me—any part in a prosecution where the case was framed and where my witnesses were lying. I, I hope, would be the first to raise my voice in protest against that manner of procedure, because any defendant, no matter what he is charged with under our system of jurisprudence is entitled to a fair and impartial trial, and that includes testimony on the part of witnesses who speak the truth. Thus, I am convinced in my own heart that Murphy and Connell told you the truth. It is true I have known Murphy for a long time. I have not known Connell so long nor so well, but he impressed me as being a gentleman. . . . Mr. Langford tells you that they got that boy Sandage in there—implied it—that Connell took him in that other room and horse-whipped him, or did something to him to make him accuse the defendant. Now that is not true and you know as well as I that it is not true. Connell would not do a thing like that. In the first place, Mr. Langford, or whatever lawyer would happen to get the case would find out about it and use it to his advantage in the trial.''

It is argued that prejudicial error appears in that the district attorney was thus allowed to give testimony and, in effect, to vouch for the truthfulness of the witnesses Murphy and Connell. It appears that these two witnesses were members of the Navy who had been assigned to police work. At the time the crime here in question was committed they had gone to the appellant's room in a hotel, one of them listening at the door while the other listened from an adjoining room. The evidence of either was sufficient to sustain a conviction as was the evidence of Sandage, the other party to the act, whose testimony was thoroughly corroborated by certain physical facts and by the testimony of a doctor who examined the parties immediately after the crime was committed. No question is or could be raised as to the sufficiency of the evidence, which was more than ample if the evidence of these two officers be entirely disregarded. While the district attorney stated that he was convinced that these two officers had told the truth he qualified this by saying it was true that he had known Murphy for a long time. This was an admission of possible prejudice which at least served to call this to the attention of the jury. While portions of this argument should have been omitted, it is not possible to believe that the jury might have been misled thereby into doing something it would otherwise not have done. In view of the overwhelming evidence of the guilt of the appellant, it is inconceivable that any existing error could have affected the result, and no miscarriage of justice appears.

The judgment is affirmed.

Marks, J., and Jennings, J., concurred.