[Crim. No. 5583.   Second Dist., Div. Three.   Nov. 13, 1956.]

THE PEOPLE, Respondent, v. HARVEY LEROY
KARMAN, Appellant.

Godfrey Isaac, Jr., for Appellant.

Edmund G. Brown, Attorney General, William E. James and Robert S. Rose, Deputy Attorneys General, for Respondent.

VALLÉE, J.—Defendant was convicted of abortion by a jury. He appeals from the judgment and the order denying his motion for a new trial.

During April, 1955, defendant was employed by the Clinical School of the Psychology Department of the University of California at Los Angeles and was working for a doctorate in psychology. He was not licensed to practice medicine.

About two months before April 6, 1955, Joyce told her

husband, Ben, she was pregnant. They discussed an abortion. Ben and Patricia, a friend of Joyce who saw her just before she (Joyce) met defendant, testified Joyce appeared to be in good health and not suffering from any illness or ailment. On April 6, in a motel room, defendant inserted a speculum and a nutcracker into Joyce with intent thereby to procure a miscarriage. She paid him $150. Ben took Joyce to St. Joseph's Hospital on April 8. Joyce was taken to General Hospital on April 13. She died on April 21.

Dr. Moss examined Joyce on April 8. His diagnosis was "an infected criminal abortion." She still had the fetus within her. It had been dead a little while. While in the hospital she expelled it. She was transferred to General Hospital for specialized treatment. An autopsy was had. The autopsy surgeon testified the cause of Joyce's death was bronchial pneumonia due to abortion.

The sufficiency of the evidence to sustain the verdict is not questioned. ■ The first specification of error is that the district attorney was guilty of prejudicial misconduct in the parts of his argument to the jury to be discussed. A photograph taken at the autopsy was in evidence. Referring to the photograph, the district attorney said, "you can look at it up in the jury room if you are so inclined—it's an autopsy picture—I'm not going to show it to you because some people don't like to see things like that—she was 26 years old April 6th. She was a girl in good health. She was pregnant. She wanted to do something about having an abortion for this pregnancy." We find nothing improper in the statement.

■ Shortly thereafter the district attorney said: "Frankly, I don't know how you feel about this matter of abortion—it is a matter of difference of opinion. Some people say well, people can't afford it, it's all right to have an abortion. Some people say if the woman's health won't stand it it's all right to have an abortion. Our law says it's all right to have an abortion if her health is of such nature she can't have a baby. Some people think abortions are all right. Some people are absolutely against all of them. If you want to know the truth, I'm pretty much against all abortions myself, I think it's a terrible thing for a girl to be talked into this." It was of course improper for the district attorney to express his personal belief as to all abortions. However, there was no assignment of misconduct or request that the court admonish the jury to disregard the statement, and it appears to have been innocuous and far from prejudicial. ■ The

district attorney told the jury that what defendant did to Joyce was "absolute butchery." We think that on the facts this was fair argument.

■ A Dr. Gilbert was called by defendant as an expert. He testified that from the medical records and the autopsy report it was his opinion that Joyce did not die of a septic abortion. He testified he was being paid $150 for his testimony. In argument the district attorney referred to Dr. Gilbert as a "paid expert" and as a "hired witness." We find nothing objectionable in the characterization. The district attorney had a right to question the credibility of the witness and the value to be given his opinion on that ground. There was no objection to the argument at the time.

■ Defendant had previously been convicted of a felony, grand theft. In argument, the district attorney said: "On cross examination I asked him if he had ever been convicted of a felony before. That is not striking a foul blow at a man, it is proper impeachment. It is proper to show a jury that a person has been convicted of a felony before. It has a bearing upon that person's credibility as a witness. You can't show whether or not a person has had a misdemeanor conviction. A misdemeanor conviction is a little light offense —petty theft is a misdemeanor. A felony conviction, such as grand theft, can be shown to the jury, bearing upon that person's character when he testifies as a witness, because people who do commit these felonies are the most unreliable of people. Probably you have never known a person in your lifetime who has ever been convicted of a felony. An ordinary citizen usually doesn't. That is one way of impeaching him. It can be done by the prosecution or the defense, any witness who testifies, whether for the defendant or not. Every once in a while a jury gets the idea you are trying to play a foul trick on a man by bringing out his record, but the law provides that for any witness, not only defendants." It cannot be said the argument was improper *in toto*. The reference to a misdemeanor conviction should not have been made. We do not agree, however, that the statement gave the jury the impression defendant had misdemeanor convictions. In other respects the argument was proper.

It is asserted Patricia and Ben, who testified for the prosecution, were improperly granted immunity after they had refused to testify. The assertion is predicated on what defendant says took place at his preliminary hearing. The transcript of the preliminary is not part of the record on appeal and the

point may not be considered. Further, this appeal is not the proper vehicle for reviewing the rulings of the committing magistrate.

██ On cross-examination defendant's counsel asked Ben, "Q. Mr. Johnson, at or about April 6th, 1955, were you regularly dating another woman?" An objection on the ground the matter was immaterial was sustained. Defendant asserts error. He argues the question was proper to show Ben's motive to commit the offense of which he (defendant) was accused. There was no error. Ben freely admitted he was interested in having Joyce aborted. Whether he was regularly dating another woman at the time was not material.

██ Defendant claims there was no proof the abortion was not necessary to preserve Joyce's life. The contention is without merit. The testimony of Patricia and Ben and the circumstantial evidence were enough to prove the fact. (*People* v. *Gallardo,* 41 Cal.2d 57, 62 [257 P.2d 29] ; *People* v. *Malone,* 82 Cal.App.2d 54, 63 [185 P.2d 870].)

Finally, defendant claims the court erred in not giving two instructions he requested, which are set out in the margin,[1] to the effect that in a crime such as that with which defendant was charged there must exist a joint operation of act and intent. ██ Abortion requires proof of a specific intent. ██ The court instructed the jury it was necessary that the prosecution prove the act be done with intent to procure the miscarriage of the woman: in other words, that proof of a specific intent was essential to a conviction. As the trial judge wrote on the refused instructions and as he forcefully pointed out on the hearing of the motion for a new trial, if the requested instructions had been given they would have tended to create a conflict in the minds of the jurors and the giving of them might have been error (see *People* v. *Zerillo,* 36 Cal.2d 222, 231-232 [223 P.2d 223] ; *People* v. *Booth,* 111 Cal.App.2d 106, 108-109 [243 P.2d 872]) ; and their

[1]"'In a crime such as that of which the defendant is accused by the information in this case, there must exist a union or joint operation of act and intent. (In a crime such as that of which the defendant is accused by the information in this case, there must exist a union or joint operation of act and intent or criminal negligence.)''

"When a person commits an act or makes an omission through misfortune or by accident under circumstances that show no evil design, intention or culpable negligence, he does not thereby commit a crime, although the same act or omission committed under different circumstances and coupled with criminal intent would constitute a crime."

refusal in fact protected "the defendant against the jury being misled too strongly adversely to him."

We find no prejudicial error in the record.

The judgment and the order denying a new trial are affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied November 26, 1956, and appellant's petition for a hearing by the Supreme Court was denied December 12, 1956.