[Crim. No. 7076. In Bank. July 24, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. SALVADOR
PEREZ, Defendant and Appellant.

Joseph A. Ball, under appointment by the Supreme Court, for Defendant and Appellant.

Stanley Mosk, Attorney General, and William E. James, Assistant Attorney General, for Plaintiff and Respondent.

WHITE, J.—This is an appeal by defendant Salvador Perez from a judgment of conviction for sale of heroin. (Health & Saf. Code, § 11501.) Defendant was sentenced to state prison following trial before a jury, where he was represented by the public defender. In addition to numerous contentions concerning alleged misconduct committed by the prosecutor at trial which defendant asserts prevented his being afforded an adjudication as to guilt solely on the basis of the evidence presented, the sufficiency of the evidence to sustain the judgment of conviction is herein challenged.

The record reveals that the People's case consisted solely of the testimony of one police officer, Rastine Calhoun, who had operated as an undercover agent of the police department in the City of Los Angeles, and exhibits authenticated only by that officer's testimony. Officer Calhoun testified as follows on direct examination: "[O]n December 7, 1960, at approximately 6:45 p. m., another person and I went into a doughnut shop at the corner of Third and Broadway. This other person ["Bob"] told me that he saw the defendant sitting . . . at the counter. . . . [Bob] said, 'There's Shorty now.' That is what he referred to the defendant as. Then . . . Bob went over and had a short conversation with the defendant, and [Bob] turned and walked out of the doughnut shop I followed Bob to the corner of Third and Broadway, and Bob said to me, 'Shorty told me to walk around the corner and wait for him.' " According to the officer, defendant came around the corner a few minutes later. Calhoun's testimony continued: "[B]y that time the defendant was standing within approximately 10 yards from where Bob and I were standing, and Bob went over to the defendant and had

a few words with him, and handed him the ten dollar bill that I had just handed him, and I saw the defendant take something from his mouth and put it into Bob's left hand, and then Bob walked over to where I was standing and then handed me a moist orange balloon.'' A police chemist testified that the balloon which Calhoun stated he received from defendant contained heroin.

Officer Calhoun testified that following the witnessed sale he went to the police department's Narcotic Division, searched through the photograph file, and that he there found an accurate photograph of defendant. The officer admitted that the photograph of defendant was not found the day of the sale, but ''[m]aybe a day or so after.'' Defendant apparently had a prior record as a narcotics user.

On cross-examination the officer admitted that since the transaction occurred at 6:45 p. m. on a December day, ''[i]t was a bit dark.'' But he stated that he had stood beside defendant while inside the doughnut shop, and that he had then seen defendant's face. Calhoun testified that he had seen the defendant while inside the doughnut shop for a period of ''about two or three minutes,'' before following Bob outside. Although the undercover officer testified that he was approximately 10 yards from defendant at the time of the alleged sale, he stated: ''I think I could get a good view of the defendant. . . . The evening was dark in a sense, but it was right on the sidewalk, and if I remember correctly, we had quite a big showcase window and the lights were on in the building, and for that reason I could see the defendant quite well.''

Officer Calhoun stated that he had never seen defendant Perez prior to their alleged encounter at the doughnut shop, but he affirmed on cross-examination that he ''recognized the defendant from among these mug shots.'' When asked, ''How many mug shots did you look at altogether, before you picked out the defendant,'' the officer responded: ''Oh, I couldn't say. We have quite a few pictures.'' Officer Calhoun was also asked on cross-examination, ''[W]ere you involved in any other undercover buys from anyone else?'' He answered that he had been engaged in approximately 30 undercover purchases. The officer had earlier stated that his temporary assignment as an undercover narcotics agent had been for a period of three months. Calhoun further testified that the $10 assertedly acquired by defendant was not marked in any way, and that no photographs or recordings were made of the transaction. It was also apparently not possible to extract

fingerprints from the moist balloon which contained the heroin.

In his testimony defendant denied the alleged narcotic transaction, and stated that he had been in the company of his girl friend, Anna Marie Martinez, during the early evening hours of December 7, 1960. He stated that he remembered that day because it was Pearl Harbor Day. Defendant further testified that subsequently he had unsuccessfully sought to locate Miss Martinez, that he thought she had gone to Denver, but that he didn't know her address there. Defendant also denied that he had ever been known as "Shorty," though he stated that he was known as "Chava" or "Chavita." The record reflects that Chavita means "Little" or "Short" Salvador, but does not stand for "Shorty."

Robert Edward Hayward, also known as Robert Diamond, testified on behalf of defendant. He denied that he was the individual called "Bob," whom Officer Calhoun had stated was involved in the within narcotics transaction. Hayward also denied ever having seen defendant Perez prior to the instant trial. However, Hayward was identified at the trial by Officer Calhoun as the individual, "Bob," who had served as the contact with defendant in the instant transaction.

Another witness for the defense was Naomi Davalos, who testified that she was a neighbor of defendant, that she had known him at intervals over the past 10 years, and that she had never known of anyone who referred to defendant as "Shorty." Defendant's half-brother, Ricardo Rivera, also testified that he had never heard anyone refer to defendant as "Shorty."

Defendant contends that he was convicted "on the wildest sort of surmise, and conjecture," and that the evidence, since based only upon Officer Calhoun's testimony, was insufficient to justify the conviction or its affirmance on appeal. Concerning this contention respondent argues that the instant case is within the holding in such cases as *People* v. *Casado,* 181 Cal.App.2d 4, 8 [4 Cal.Rptr. 851], and *People* v. *Smith,* 174 Cal.App.2d 129, 134 [344 P.2d 435], to the effect that the positive testimony of one police officer that he purchased narcotics directly from a defendant is sufficient to sustain a conviction of sale of narcotics. But under the factual situation herein it cannot be said that the instant sale was made directly to the officer, so that respondent's cited cases are not persuasive. Officer Calhoun testified that he did not speak to the intended seller while inside the doughnut shop,

and according to the officer's statement he was 10 yards away from the actual sale transaction. Thus the within sale was made directly to the officer's contact man, rather than to the officer.

However, while it is readily apparent that the amount of evidence contained in the record in support of the People's case and the judgment, when viewed with the sharply conflicting evidence on behalf of defendant, may not furnish sufficient proof for assertion of defendant's guilt "to a moral certainty" (*People* v. *Nichols,* 52 Cal.App.2d 31, 35 [125 P.2d 513]), this court may not weigh the evidence in determining whether it was sufficient to sustain the judgment. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].) We are thus compelled to assume, for purposes of determining the sufficiency of the evidence, that the jury returned its verdict upon the basis of the testimony of Officer Calhoun that it was defendant who sold the within narcotics. It cannot be said that the circumstances testified to by the officer do not " *'reasonably'* justify the verdict of the jury" (*People* v. *Carvalho,* 112 Cal.App.2d 482, 489 [246 P.2d 950]), and the weight to be accorded that officer's testimony was a matter for determination by the jury. (*People* v. *Williams,* 27 Cal.2d 220, 227 [162 P.2d 692].) Thus as a matter of law the evidence was sufficient to support the judgment.

However, we are urged to consider several instances of alleged misconduct by the prosecuting attorney which, defendant contends, in their cumulative effect tipped the scales against him in this case where evidence pointing to guilt was minimal. (See *People* v. *Zerillo,* 36 Cal.2d 222, 233 [223 P.2d 223]; *People* v. *Ford,* 89 Cal.App.2d 467, 470-471 [200 P.2d 867].) It is initially argued that the prosecutor improperly cross-examined defendant's witness "Bob" Hayward, following his negative testimony concerning the narcotics transaction to which Officer Calhoun testified.

Hayward's cross-examination began as follows: "Q.: Mr. Hayward, are you sometimes called Bob? A.: Occasionally. Q.: Have you been convicted of a felony? A.: No. Mr. Larsen [defense counsel]: Your Honor, at this time I move to cite the District Attorney for misconduct, if he has no proof of a felony." The following proceedings then occurred at the bench, outside the hearing of the jury: "Mr. Boon [deputy district attorney]: I submit this isn't a matter of requiring proof. It is a matter of asking the question in good faith. Not only is it obvious that this man is in custody at the

present time, but we had an earlier proceeding in which Mr. Larsen inquired about this man and inquired as to his status as being on parole or on probation. Mr. Larsen: I believe he stated he was not. Mr. Boon: I don't believe that is correct. Mr. Larsen: I will move to cite the District Attorney for prejudicial misconduct, and I will move for a mistrial. The Court: I think Mr. Boon is asking the question in good faith. I will deny the motion. I don't see how you can prejudge his question at this time. Mr. Larsen: I will request that a specific instruction be given to the jury to disregard any inference that might be drawn from the question. The Court: I will do that at the end of the trial, as far as that is concerned."[1]

The deputy district attorney did not then proceed further with this type of cross-examination, nor did he at any time during the trial offer any proof of prior felony convictions which Hayward might have suffered. Thus the only matter contained in the record evidencing the prosecutor's good faith in so questioning Hayward is the deputy district attorney's statement that the witness was then in custody and his professed belief that Hayward was on parole or probation, and concerning the latter status there was apparently some question.

While section 2051 of the Code of Civil Procedure provides that for impeachment purposes a prior felony conviction "may be shown by the examination of the witness, or the record of the judgment," thus permitting a witness to be orally questioned concerning prior felony convictions (*People* v. *Allen,* 189 Cal.App.2d 706, 710 [11 Cal.Rptr. 440]), "[s]uch cross-examination is limited by the requirement that it must be conducted in good faith." (*People* v. *Linyard,* 151 Cal.App.2d 50, 55 [311 P.2d 57].) It would appear that an insufficient showing of good faith was made in the instant circumstances. As stated in *People* v. *Craig,* 196 Cal. 19, 28 [235 P. 721], "The usual manner of making proof of a prior [felony] conviction is to ask the witness *who has suffered such a conviction* if he has been theretofore convicted of a felony, and *if he denies that he has*

---

[1] No specific instruction concerning this question was given, although the jury was generally instructed: "[I]f any counsel intimated by any of his questions that certain hinted facts were or were not true, you must disregard any such intimation, and must not draw any inference from it. As to any statement made by counsel in your presence concerning the facts in the case, you must not regard such a statement as evidence."

*been so convicted, to produce a copy of the judgment of conviction."* (Emphasis added.) The clear implication of the latter statement in *Craig* is that the questioner should be prepared to show by documentary evidence that the witness has suffered a prior conviction, in the event of a denial thereof. (*People* v. *Muchupoff*, 79 Cal.App. 306, 311 [249 P. 240]; see *People* v. *Hamilton*, 33 Cal.2d 45, 49-50 [198 P.2d 873] [error to allow proof of prior burglary conviction where county jail sentence imposed]; Code Civ. Proc., § 2051 [prohibiting inquiry as to prior felony conviction where witness "has previously received a full and unconditional pardon, based upon a certificate of rehabilitation"]; McBaine, California Evidence Manual (2d ed. 1960) § 422, pp. 126-128.) In a recent case a witness for the defendant was asked on cross-examination: " 'Isn't it a fact that in Cleveland, Ohio in 1934 you were convicted of the felony of embezzlement?' " The witness responded "that it was not a fact." The appellate court concluded: "In the absence of an intention to prove this former conviction, and there was no offer of proof, the question was improper."[2] (*People* v. *Lo Cigno,* 193 Cal.App.2d 360, 386 [14 Cal.Rptr. 354]; accord: *People* v. *Linyard, supra,* 151 Cal.App.2d 50, 55; *People* v. *Theodore,* 121 Cal. App.2d 17, 27 [262 P.2d 630]; *People* v. *Chenault,* 74 Cal. App.2d 487, 493-494 [169 P.2d 29]; 54 Cal.Jur.2d, Witnesses, § 156, p. 569.) It has also been announced in other jurisdictions that an interrogator, in order to avoid a charge of misconduct, must be prepared to follow up with proof questions of a witness concerning prior felony convictions. (*State* v. *Herrera* (1958) 8 Utah 2d 188, 189-191 [330 P.2d 1086] [reversible error to question critical defense witness concerning priors, where many questions answered in negative, and

---

[2]While the instant trial judge stated, following objection by the defense to the prosecutor's question to Hayward concerning a prior felony conviction, that the People's representative had asked the question "in good faith," the court added: "I don't see how you can prejudge his question at this time." The latter remark correctly indicated that the determination concerning the requisite good faith on the part of the interrogator may not be made until it is known whether the questioner possesses proof of the prior felony conviction about which inquiry was made of the witness. In *Rosa* v. *State,* 86 Tex.Crim. 646 [218 S.W. 1056], the trial court had allowed, over objection, cross-examination concerning prior criminal conduct. In reversing the appellate court observed: "Possibly in ruling upon the examination the court assumed that the proceedings would be followed by proof tending to establish the appellant's identity with the criminal record and acts which by his questions the prosecuting officer gave the jury to understand were in his possession. . . ." (218 S.W. at p. 1057.)

where no documentary evidence offered to substantiate implications in questions] ; *State* v. *Stago* (1957) 82 Ariz. 285, 287 [312 P.2d 160] [error to question defendant concerning a prior, where prosecutor not prepared to prove the prior if witness answered in negative] ; *Kizer* v. *State* (1939) 67 Okla. Crim. 16, 69-70 [93 P.2d 58] [misconduct to question witnesses for defendant and so discredit them concerning priors, where no proof offered to show former convictions] ; *Rosa* v. *State* (1920) 86 Tex.Crim. 646 [218 S.W. 1056, 1057] ; see *State* v. *Hilliard* (1961) 89 Ariz. 129, 135 [359 P.2d 66] ; *State* v. *Coloff* (1951) 125 Mont. 31, 35-36 [231 P.2d 343] ; *Leo* v. *State* (1902) 63 Neb. 723, 730-731 [89 N.W. 303] ; see also *People* v. *Kosearas* (1951) 408 Ill. 179, 180-181 [96 N.E.2d 539].)

■ As another instance wherein it is contended by appellant that the prosecution improperly sought to undermine the credit to be accorded Hayward's testimony in support of defendant's denial of guilt, our attention is directed to what occurred during subsequent cross-examination of that witness, immediately following Hayward's statement that he had never seen defendant Perez prior to trial. The deputy district attorney asked: ''Mr. Hayward, you have been threatened, haven't you?'' The witness responded, ''No, I haven't.'' Although there was no objection to the latter question, it is contended that ''[w]hen the District Attorney asked this question, he seriously prejudiced the defense of Perez. The jury have a right to believe that the District Attorney is in good faith and probably had a hidden source of information. When he told them in effect that Perez had controlled the testimony of the witness through fear, the jury had a right to believe it.'' The prosecution made no attempt to prove that Hayward had been threatened by defendant, nor was such threat suggested by any of the other evidence in the record.

Since the record is barren of any evidence that the witness Hayward had been threatened in any manner whatsoever, we are impressed that the prosecution should have been prepared to substantiate the inevitable insinuation in the latter question to the effect that Hayward's testimony had been coerced by defendant or some individual acting on his behalf. (See *People* v. *Gilliland,* 39 Cal.App.2d 250, 259, 261-262 [103 P.2d 179].) Since there was no evidence or offer of proof concerning threats upon Hayward, and since the question was asked of an extremely critical defense witness concerning a key factor in that witness' credibility, it would appear that the

question was improper. (See *People* v. *Wynn,* 44 Cal.App.2d 723, 733 [112 P.2d 979].)　　As was recently stated concerning attempts by the prosecution to place evidence before the jury in the form of questions of a witness which the district attorney had no reason to doubt would be answered in the negative: "It was improper to ask questions which clearly suggested the existence of facts which would have been harmful to defendant, in the absence of a good faith belief by the prosecutor that the questions would be answered in the affirmative, or with a belief on his part that the facts could be proved, and a purpose to prove them, if their existence should be denied."[3] (*People* v. *Lo Cigno, supra,* 193 Cal. App.2d 360, 388; see 6 Wigmore, Evidence (3d ed. 1940) § 1808, pp. 276-279; see also *Dastagir* v. *Dastagir,* 109 Cal. App.2d 809, 816-820 [241 P.2d 656].)

　In this regard it is further contended on behalf of defendant that misconduct occurred in the prosecutor's arguments to the jury. We are referred to the following remarks to the jury, made despite absence from the record of evidence that Hayward had been threatened. Concerning Hayward the deputy district attorney stated: "Well, incidentally, I think it is quite clear and plain to you that he has an awful lot of motive to deny that he worked with the police in obtaining evidence of this nature. He obviously is worried for his own safety. He *is* worried for the safety of his life. . . ." Defense counsel did not object to the latter statement.

　As was recently stated in *People* v. *Love,* 56 Cal.2d 720, 730 [17 Cal.Rptr. 481, 366 P.2d 33, 809]: "Counsel's summation to the jury 'must be based solely upon those matters of fact of which evidence has already been introduced or of which no evidence need ever be introduced because of

---

[3]The rule of procedure set forth in *People* v. *Malloy,* 199 Cal.App.2d 219, 226-227 [18 Cal.Rptr. 545], is not, as urged by respondent, applicable to the instant situation, since *Malloy* dealt with the mode of impeaching or rebutting testimony on behalf of a defendant's alleged good character following the defendant's having made himself vulnerable by choosing to open up the avenues for such possibly damaging inquiry. (See Witkin, California Evidence, § 636, p. 681; McCormick, Evidence (1954) § 158, pp. 337-338.) Since as a practical matter a defendant must present available witnesses to support his general defense, it is necessary to safeguard against effects prejudicial to defendant in the cross-examination of such witnesses by procedures imposing more stringent curbs to ensure the interrogator's good faith, than in the situation where a defendant chooses to open up inquiry as to his character and thereby offers the prosecution the opportunity to ask damaging questions seeking to rebut evidence of good character. (See *Michelson* v. *United States,* 335 U.S. 469, 485 [69 S.Ct. 213, 93 L.Ed. 168].)

242

their notoriety as judicially noticed facts.' '' While there might be a popularly held belief that informers are threatened by guilty defendants, such a belief would not appear to have that degree of reliability or universality to have become a matter of "common human experience or well known laws of natural science" (*People* v. *Love, supra,* 56 Cal.2d 720, 732), so that a jury may take judicial notice thereof, even though such behavior may with some frequency be called to the attention of law enforcement personnel.

 Since the prosecutor's argument was not based upon evidence in the record, and since the jury could not have taken judicial notice of the alleged phenomenon of coercion of informers (see *People* v. *Love, supra,* 56 Cal.2d 720, 732 [23a]), the argument concerning threats upon Hayward was improper. (See *People* v. *Sanchez,* 35 Cal.2d 522, 529-530 [219 P.2d 9]; *People* v. *Ford, supra,* 89 Cal.App.2d 467, 469-471; *People* v. *Hanks,* 35 Cal.App.2d 290, 301-302 [95 P.2d 478].)

 It is further contended that the prosecutor improperly stated, in arguing to the jury, that "The defendant has not made any denial of the fact that Third and Broadway is one of his hangouts." Apparently the deputy district attorney was thereby attempting to associate defendant with a narcotics area. It is also urged the latter statement to the jury must be considered in the light of certain questions asked of defense witnesses on cross-examination. Naomi Davalos, defendant's neighbor who stated that to her knowledge defendant had never been referred to as "Shorty," was asked: "You are not familiar with what nickname, if any he has, in the neighborhood of Third and Broadway, are you?" Mrs. Davalos responded, "No, sir." And defendant's half-brother Ricardo Rivera, was asked following his statement that among the family defendant was never referred to as "Shorty": "Are you familiar or not familiar with any nickname the defendant may have in the vicinity or neighborhood of Third and Broadway?" Rivera replied, "Not familiar." Also, in his argument the prosecutor commented: "On his behalf, the defendant presented two friends who said that they hadn't heard him called Shorty, but they both acknowledge that they didn't know what his buddies in the neighborhood where he hangs out around Third and Broadway call him." No objections were made to any of the latter questions or arguments to the jury.

While particular objection is made to the prosecutor's

implication that defendant "hangs out around Third and Broadway," and has "buddies" in that area, there was evidence in the form of testimony by Officer Calhoun that it was defendant who was located in a doughnut shop in that area, that the seller was known to Calhoun's contact man, and that the seller was referred to as "Shorty." Even though proof of acquaintance with a single individual in an area would hardly warrant a conclusion that such an individual has "buddies" in that locality, and a single observance in an area is not proof that one "hangs out" in the area, it would appear that the above recited evidence in the officer's testimony formed an adequate basis for the within attacked questions and arguments by the prosecution.[4] (See *People* v. *Sanchez,* 148 Cal.App.2d 593, 596 [307 P.2d 79]; *People* v. *Karman,* 145 Cal.App.2d 801, 804 [303 P.2d 71].)

Defendant contends that further misconduct occurred during the prosecutor's argument to the jury, in that an additional improper reference was made to circumstances not in evidence. Since Officer Calhoun had identified the narcotics seller as "Shorty," the People sought to establish that defendant was known by that nickname. Following denials by defendant and his witnesses to the effect that such a name had been applied to defendant, the prosecution sought to establish through further testimony of Officer Calhoun that the "moniker" file in the police department identified defendant as "Shorty." Defendant objected to the latter line of questioning on grounds that "it calls for hearsay and it doesn't call for the best evidence." However, notwithstanding that the objection was sustained, and that the prosecutor made no attempt to prove that the aforesaid "moniker" file had so described defendant, the prosecutor in his argument to the jury stated: "The [officer] told you that after this transaction he went to the Narcotics Office Headquarters and used their records of narcotic suspects to try and identify the man whom he observed to have this transaction, because he didn't know him by name and he check[ed] a moniker file or a file of nicknames and he then went to the mug book and found the photograph [of defendant]. . . ." No objection was made to the latter recital to the jury.

Had the People established that defendant was known to

---

[4]The record also contains the following statement by Officer Calhoun, on recross-examination, reciting a remark attributed to the officer's contact man: ". . . he [Diamond] said that Shorty usually came to the doughnut shop between 6:00 and 7:00 o'clock."

the police and the underworld as "Shorty," an important piece of evidence would have been supplied, tending to corroborate Officer Calhoun's testimony that the narcotics seller was called "Shorty," and link defendant with the instant sale. But the inquiry concerning what Calhoun might have learned from the "moniker" file as to defendant's appellation by that file, if any, was properly forbidden following defendant's hearsay objection. (See McBaine, California Evidence Manual (2d ed. 1960) §§ 992, 996; 19 Cal.Jur.2d, Evidence, § 381.) It is not unreasonable to believe, as defendant urges, that the above-quoted argument to the jury, combined with the earlier attempt to question Calhoun concerning his searches in the "moniker" file, caused the jury to believe that the police files identified defendant as "Shorty." Thus the deputy district attorney sought to produce potentially prejudicially "evidence" before the jury in the form of argument, which manner of argument is improper. (See *People* v. *Mora,* 139 Cal.App.2d 266, 273 [293 P.2d 522]; *People* v. *Bell,* 138 Cal. App.2d 7, 14 [291 P.2d 150]; *People* v. *Adams,* 92 Cal.App. 6, 13-14 [267 P. 906]. Fricke, California Criminal Procedure (4th ed. 1955) pp. 398-399, and cases cited therein.)

 Defendant complains of a further instance of alleged misconduct by the prosecution, wherein the deputy district attorney referred to the defendant's having secured the name of the witness Hayward. In an attempt to overcome the testimony by defendant and Hayward that they were unknown to one another prior to the instant trial, the prosecutor stated during the closing argument to the jury: "Now, Mr. Diamond [Hayward] was brought here as a witness for the defendant. Now you may wonder where the defense got Mr. Diamond's name——" Objection was made, and in a colloquy at the bench it was brought out that defendant had obtained Hayward's name in a prior discovery proceeding, which proceeding was of course outside the presence of the jury. The colloquy at the bench concluded: "Mr. Larsen [defense counsel]: Counsel has made an objection and I will ask that Mr. Boon be restricted to talking about the matters that are directly before the jury. The Court: Yes, I will so restrict you, Mr. Boon. I think you are going into something that was done outside of the presence of this jury and therefore is improper." However, at no time was the jury advised of the manner in which defendant obtained Hayward's name, or of the ruling of the court following proceedings had outside the presence of the jury.

It would not be unreasonable to say that the prosecutor's remark may have caused the jury to believe that defendant was previously acquainted with Hayward, which belief would have bolstered Officer Calhoun's testimony which had indicated their prior acquaintance. Thus the extrarecord and therefore improper remark may have seriously prejudiced defendant's case in the minds of the jurors.

 It is additionally contended by defendant that there occurred a final instance of misconduct by the prosecutor during that especially critical period wherein the latter official made his closing argument to the jury. (See *People* v. *Talle,* 111 Cal.App.2d 650, 677 [12] [245 P.2d 633].) The deputy district attorney made the following comments at the conclusion of his argument: "Ladies and Gentlemen, . . . I want to make one or two comments on the reliability of the witness whom Officer Calhoun said was known to him as Robert Diamond. . . . You can readily see that person, who was in with narcotic peddlers, would be trusted by them, and he would be a turncoat to them if he led the police to them and he is probably not the nicest kind of person—he is not the type of person that you and I would ordinarily classify as a desirable neighbor or that you would associate with. Mr. Diamond . . . is that type of character, and I don't think his testimony is credible one way or the other. I wouldn't have called him as a witness for the People because I wouldn't have had the nerve to ask you to believe him, and when he testifies for the other side, I don't believe he deserves any more credibility. *That is my opinion of his testimony and of Mr. Hayward.*" (Emphasis added.)

 While a "prosecuting attorney has a wide range in which to state his views as to what the evidence shows and the conclusions to be drawn therefrom" (*People* v. *Mason, supra,* 184 Cal.App.2d 317, 364), and in his argument to the jury the prosecutor may comment upon the credibility of witnesses "in the light of all the evidence in the case" (*People* v. *Baker, supra,* 183 Cal.App.2d 615, 625 [7 Cal.Rptr. 22]; accord: *People* v. *Sanchez, supra,* 148 Cal.App.2d 593, 596; *People* v. *Karman, supra,* 145 Cal.App.2d 801, 804; *People* v. *Pierson,* 69 Cal.App.2d 285, 295-296 [159 P.2d 39]), "[i]t is misconduct for a prosecuting attorney to express his personal belief as to the reliability of a witness." (*People* v. *Cotton,* 169 Cal.App.2d 1, 3 [336 P.2d 672]; see Note 81 A.L.R.2d 1240; cf. *People* v. *Carlin,* 178 Cal.App.2d 705, 719-722 [3 Cal. Rptr. 301]; *People* v. *Mora, supra,* 139 Cal.App.2d 266, 273;

*People* v. *Bell, supra,* 138 Cal.App.2d 7, 14; Note 75 A.L.R. 53.) ▇ Such an expression of personal opinion is misconduct whether the prosecutor is seeking thereby to bolster testimony which was in support of the People's case (*People:* v. *Adams,* 182 Cal.App.2d 27, 34-35 [5 Cal.Rptr. 795] ; *People* v. *Cowan,* 38 Cal.App.2d 231, 246 [101 P.2d 125, 135] ; *People* v. *Brendle,* 25 Cal.App.2d 161, 163-164 [76 P.2d 706] ; *People* v. *Adams, supra,* 92 Cal.App. 6, 11-14), or whether the People's representative is attempting to discredit the credibility or reliability of witnesses testifying in support of the defendant. (*People* v. *Pantages,* 212 Cal. 237, 245-248 [297 P. 890] ; *People* v. *Pollock,* 31 Cal.App.2d 747, 758-759 [89 P.2d 128] ; *People* v. *Podwys,* 6 Cal.App.2d 71, 73 [44 P.2d 377] ; *People* v. *Leach,* 137 Cal.App. 753, 757-758 [31 P.2d 449].)
▇ Thus while the deputy district attorney legitimately commented herein upon Hayward's veracity because of that witness' alleged connection with a narcotic seller, which comments could have been based upon Officer Calhoun's testimony linking Hayward with such an individual, the prosecutor's statement that in his personal opinion Hayward's testimony was in no way credible constituted misconduct.

The above expression of personal belief by the deputy district attorney concerning Hayward's credibility tended to improperly imply to the jury that the deputy district attorney possessed information as to that witness' character and credibility in addition to the evidence adduced during the trial bearing upon Hayward's reliability as a witness. (See *People* v. *Edgar,* 34 Cal.App. 459, 467-468 [167 P. 891].) ▇ The record evidence consisted solely of Officer Calhoun's identification of Hayward as the individual who spoke with the seller in the doughnut shop, and later carried out the transaction while the officer stood some distance away. There was no evidence adduced at the trial that Hayward habitually consorted with narcotic addicts or dealers, that he was involved in any transaction other than the one instantly before us, or that he was a regular turncoat or "stool pigeon." Also, proof is entirely lacking concerning the source of Hayward's alleged acquaintance with the instant seller, or his motives for leading the undercover officer to the seller. Since they were based upon insufficient evidence in the record, the prosecutor's remarks concerning Hayward's credibility represent another improper attempt to use argument to the jury as a means of supplying additional testimony in support of the People's case.

 Another vice of statements expressing the opinion of prosecuting officials concerning the credibility of witnesses, apart from their extrarecord character, is that such expressions of opinion may be given undue weight in the eyes of the trier of fact because they emanate from a public official in a responsible position, who is charged with a just determination of the criminal prosecution. (See *People* v. *Arends,* 155 Cal.App.2d 496, 509 [318 P.2d 532]; *People* v. *Talle, supra,* 111 Cal.App.2d 650, 677-679.) As was indicated in *People* v. *Pantages, supra,* 212 Cal. 237, 248, juries very properly regard the prosecuting attorney as unprejudiced, impartial and nonpartisan, and statements made by him are apt to have great influence.

It is contended on behalf of respondent, however, that defendant may not on appeal urge misconduct as prejudicial, in the absence of having properly raised those issues in the trial court. The applicable rule has recently been stated in *People* v. *Lyons,* 50 Cal.2d 245 [324 P.2d 556], as follows: " 'The general rule regarding misconduct of the district attorney which tends to and is likely to result in prejudice to the defendant is that where no objection is made to such misconduct by the defendant, or where objection is made and the court sustains the objection and properly admonishes the jury, the misconduct claimed to be prejudicial to defendant's rights will not furnish grounds sufficient to justify the granting of a new trial or the reversal of the judgment. [Citation.] There are two exceptions to this general rule. One is where the case is closely balanced and there is grave doubt of defendant's guilt, and the acts of misconduct are such as to contribute materially to the verdict, a miscarriage of justice results requiring a reversal. [Citation.] The other exception is where the act done or remark made is of such a character that a harmful result cannot be obviated or cured by any retraction of counsel or instruction of the court. In such cases the misconduct will furnish ground for a reversal of the judgment, even where proper admonitions are given by the court.' " (*50 Cal.2d at p. 262.*) As hereinbefore indicated, the evidence in the case at bar may be considered to be "closely balanced," within the meaning of the first above exception to the general rule concerning treatment of misconduct on appeal, as stated in the *Lyons* case, so that prejudicial misconduct may be found herein, even in the absence of objection or where objection was made and appro-

priate action taken by the trial court. (*People* v. *Warren,* 175 Cal.App.2d 233, 243 [346 P.2d 64].)

The People's case was based only upon the testimony of the undercover officer (see *People* v. *Kirkes,* 39 Cal.2d 719, 727 [249 P.2d 1]), whose principal opportunity to observe the intended narcotics seller occurred while the officer stood near the intended seller for two or three minutes in a doughnut shop, and the record does not indicate the quality or quantity of the light present in the shop. Nor did the officer testify that the individual to whom the contact man spoke while inside the doughnut shop was continually in view from the initial conversation until the moment of sale. The officer and his contact apparently waited around the corner, so that continual observation following the officer's initial identification of the intended seller would appear to have been impossible. Moreover, the officer testified that he stood 10 yards away from where the momentary sale transaction took place, and he testified that it was "a bit dark." Also, the record does not reveal or suggest that defendant at any time made corroborative admissions concerning the instant sale, as occurred in other cases involving sales of narcotics to undercover officers where the evidence consisted principally of testimony of the purchasing undercover officer, such as *People* v. *Smith, supra,* 174 Cal.App.2d 129; *People* v. *Bryant,* 157 Cal.App.2d 528 [321 P.2d 45]; *People* v. *McCrasky,* 149 Cal.App.2d 630 [309 P.2d 115], or *People* v. *Johnson,* 99 Cal.App.2d 559 [222 P.2d 58].

Since a close question is presented as to defendant's guilt, it is not conclusive for purposes of our determination of this appeal that no objection was made to the prosecutor's asking Hayward if he had been threatened, the improper argument as to threats on Hayward's life, or the deputy district attorney's improper expression of his opinion concerning the credibility of the defense witness Hayward. (*People* v. *Sampsell,* 34 Cal. 2d 757, 763-764 [214 P.2d 813]; *People* v. *Romano,* 197 Cal. App.2d 622, 639 [17 Cal.Rptr. 399]; *People* v. *Albert,* 182 Cal.App.2d 729, 743 [6 Cal.Rptr. 473]; *People* v. *Duran,* 57 Cal.App.2d 363, 374 [134 P.2d 305]; Fricke, California Criminal Procedure (4th ed. 1955) p. 407.) The refusal to consider misconduct raised for the first time on appeal would, in a case where the evidence is closely balanced, result in a possible miscarriage of justice (see *People* v. *Lyons, supra,* 50 Cal.2d 245, 262; *People* v. *Sampsell, supra,* 34 Cal.2d 757, 764; *People* v. *Mayen,* 188 Cal. 237, 259 [13] [205 P. 435, 24

A.L.R. 1383]; *People* v. *Fleming,* 166 Cal. 357, 359, 370-371 [136 P. 291, Ann.Cas. 1915B 881]; *People* v. *Johnson,* 105 Cal. App.2d 478, 487 [234 P.2d 116]), in contrast to the more usual case where there is ample evidence of guilt and misconduct by the prosecution may not warrant a reversal of the judgment or a new trial. (See Cal. Const., art. VI, § 4½.) There was timely objection to the question asked of Hayward whether he had been convicted of a felony, the prosecutor's improper reference in argument to Officer Calhoun's alleged location of defendant's photograph through the "moniker" file, and the deputy district attorney's attempt to suggest in argument that because Hayward appeared for the defense defendant was acquainted with Hayward. Thus all of the above-detailed instances of misconduct by the deputy district attorney may be considered in determining whether a miscarriage of justice has resulted.

Respondent contends that "an examination of the record will reveal that this appellant was fairly tried and properly convicted," and hence that no miscarriage of justice has resulted. With this contention we cannot agree because we are here confronted with a record which reflects, as heretofore pointed out, a series of acts of misconduct on the part of the deputy district attorney (see *People* v. *Zerillo, supra,* 36 Cal. 2d 222, 233) in a case which presented a minimal evidentiary framework in support of the judgment. We are impressed it may well be said that "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error[s]." (*People* v. *Watson,* 46 Cal.2d 818, 836-837 [299 P.2d 243].)

It would be an unwarranted impeachment of the legal learning of counsel for the People to intimate that he did not know the aforesaid course of conduct on his part was improper and peculiarly calculated to prejudice the substantial rights of the accused to that fair and impartial trial to which, whether innocent or guilty, he is entitled. Furthermore, such conduct may serve to defeat the punishment of crime by jeopardizing a conviction when a defendant is clearly guilty. That the question asked of the defense witness Hayward as to whether he had previously been convicted of a felony in the absence of any proof thereof, followed by the suggestive question that the witness had been threatened or coerced by defendant, coupled with the declaration of the prosecutor that in his personal opinion Hayward's testimony was not worthy of belief, together with the other aforesaid unwarranted statements to

the jury was utilized for the manifest purpose of prejudicing the jury against the defendant is obvious. And that the accumulated conduct of the prosecution was prejudicial, there can be little doubt. (*People* v. *Zerillo, supra,* 36 Cal.2d 222, 233; see *People* v. *Moore,* 43 Cal.2d 517, 527 [275 P.2d 485] ; 43 Cal. L.Rev. 381, 391-392.)

It would ignore human experience and belie the dictates of common sense to entertain a contrary view. True, in some instances no objection was interposed. However, we feel that the foregoing course of conduct was so improper and so offensive to the requirement that the question of guilt or innocence shall be determined by an orderly legal procedure in which the rights of both the People and the defendant shall be respected, that the trial judge should have intervened without waiting for an objection.

What was said by the Supreme Court of the United States, speaking through the Chief Justice in the case of. *Viereck* v. *United States,* 318 U.S. 236, 248 [63 S.Ct. 561, 87 L.Ed. 734], reflects our views as to the duties and obligations of a prosecuting officer: We quote: " 'The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at. liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.' "

It is true the jury had an opportunity to observe the demeanor and character of the witnesses and may have had reason to return the verdict herein irrespective of the errors committed during the trial. As to this, of course, we can say nothing. But from the mere record, as we read it however, the errors may have turned the scale in favor of the prosecution. When a defendant is denied that fair and impartial trial guaranteed by law, such procedure amounts to a denial of due process of law (*Powell* v. *Alabama,* 287 U.S. 45, 52 [53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527]).

While the provision of our Constitution restricting

the jurisdiction of appellate courts to "questions of law alone" (Cal. Const., art. VI, §§.4, 4b) has not in terms been amended, section 4½ of article VI adopted in 1911, undoubtedly makes it the duty of any appellate court in considering the questions of law presented on an appeal in a criminal case to consider "the entire cause, including the evidence," for the purpose of determining whether any error or erroneous procedure complained of "has resulted in a miscarriage of justice." If the appellate court be of the opinion that such has been the effect, it must reverse the judgment. Under section 4½, article VI of our state Constitution, an appellate court must necessarily be vested with a wide discretion in determining the effect of errors, erroneous procedure or misconduct, and each case must depend upon its own circumstances. It is the "opinion" of the court based upon a full consideration of the particular record before it that is to control upon the question whether the error complained of has resulted in a miscarriage of justice. We are satisfied from the record in this case that the interests of justice require that a new trial should be had. Criminal cases should not be conducted with an eye to the saving grace of section 4½, article VI, of our state Constitution. (See 43 Cal.L.Rev. 381, 388.) Except in proceedings on a motion for a new trial, the constitutional section is of no concern to the trial courts, and so far as its application goes, it is of interest only to the courts of review. (*People* v. *Lyons*, 47 Cal.2d 311, 319 [303 P.2d 329]; *People* v. *Black*, 73 Cal.App. 13, 43-44 [238 P. 374].)

The judgment and the order denying defendant's motion for a new trial are, and each is reversed.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., and Peters, J., concurred.