[Crim. No. 1898.    Fourth Dist.    Nov. 1, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. GARY ALLEN BRAY, Defendant and Appellant.

Walter M. Milford and O'Connor, Milford & Porter, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and David M. Rothman, Deputy Attorney General, for Plaintiff and Respondent.

GRIFFIN, P. J.—Billy Webster and Gerald Larson were living in a second-story apartment at 3730 Eighth Avenue, San Diego, on September 2-3, 1962. Webster was asleep on a couch in the living room and Larson was in the bedroom. The rear door of the apartment was left open for better air circulation. About 5 a.m., Webster was awakened and saw a man standing in the room near the rear doorway. Webster shouted, "Who is it?" and the man answered, "Is that you Eli?" Webster jumped up, turned on the light and saw defendant with a black folder in his hand. He also had a lit cigarette. Webster identified defendant as the man he saw. Defendant ran out the door and down the back stairs. Webster partially dressed and noted that defendant had dropped the folder on the couch. It belonged to Larson, who had left it with a package of Camel cigarettes on the nearby table the evening before. The cigarettes were missing. Webster and Larson ran downstairs to pursue defendant. An officer had received a prowler call in that block and was parked nearby with his lights off. He heard running footsteps. Defendant ran toward him and he was stopped. The officer knew defendant and asked him what he was doing. Defendant said that he had gone to a gas station where he obtained some cigarettes and was returning to his girl friend's house. The officer knew that the gas station was closed at that time, so he searched defendant and arrested him as the possible prowler.

Webster and two other men ran up to the police car where defendant was seated and Webster pointed to defendant and stated that he was the man who had entered his apartment. Webster then related to the officer what had happened. The

officer removed a package of Camel cigarettes from defendant's pocket and asked defendant if the cigarettes came from Webster's apartment and defendant replied, "The guy's crazy. He didn't even get close enough to identify me." Defendant was taken to jail and there interviewed. He first denied any knowledge of the events but later freely and voluntarily admitted entering Webster's apartment to steal money. He related the events as described by Webster. The conversation was tape-recorded. The next day, he again made a statement to the same effect, which was taken down in shorthand. He said that he took a package of cigarettes from the apartment, picked up a leather object and fled. The next day, he refused to sign the statement because he said it contained mistakes and also because his counsel had advised him not to sign it. He was later confronted by Webster, the story was retold, and defendant made no reply. Defendant told an officer that day that he had admitted the burglary to another officer.

In defense, defendant testified that he was with one Earl Richard Ahrlin and one Estevan Espinoza on the morning of September 3 and that they were at Espinoza's sister's home until 5:30 a.m., playing music and dancing, and that he was waiting for a bus when the officer hailed him and accused him of the burglary. He claimed his admissions of the burglary were obtained by physical and mental coercion on the part of the officers. He denied the burglary.

Ahrlin and Espinoza corroborated defendant's story. Ahrlin went further and testified that he left the party before 5:30 a.m. to see his girl friend; that he went up to an apartment on Seventh or Eighth Avenue and called out, "Is Keely there? and someone yelled at him and he left hurriedly. Ahrlin indicated that it might have been he who entered Webster's apartment by mistake.

No issue is made as to the sufficiency of the evidence to convict this defendant.      The only point raised on appeal is that the prosecutor made certain statements in his argument to the jury which constituted prejudicial error.

The deputy district attorney, in his opening argument, started with the admonition to the jury that what either counsel might say was not evidence and the jury should determine who was telling the truth. Thereafter, he remarked that the defendant had nothing to lose, so he "can get up there and lie"; and that Webster had no reason to lie. No objection was made to the statement.

Defense counsel then remarked that the prosecutor called

the defendant a liar and said that on this basis "you are supposed to find him guilty"; that he noticed during the argument of the district attorney that the only person he accused of lying was the defendant; that he didn't accuse any of the other defense witnesses of lying. Defense counsel further stated: "Now, it's possible, in rebuttal to my argument, that he will come back and say all the other witnesses were lying, too, but I submit it's a little late. He could have done that earlier. Therefore, not accusing Richard Ahrlin of lying, are we to take it that Richard Ahrlin's testimony is not doubted by the District Attorney?" In reply, the prosecutor remarked: "Now, ladies and gentlemen, maybe I'm calling people liars, but I think you've got to in this case. "Maybe it hurts the defendant's feelings when I stand up here and call him a liar, but that's what he is. He's a perjurer. He's got nothing to lose. Ahrlin here—I didn't comment on him previously. I said that—I didn't say that I thought he was telling the truth. I think that he's a real ringer in the case. "Ahrlin sat throughout the whole trial with his sneers, and so forth, in the back row. He thought up the story—I think he and Bray got together; Ahrlin was out talking—you saw him talking with the defense attorney. Ahrlin's a friend of Bray's, obviously. He doesn't know where he was. He tells this story; I don't believe him. . . . his story is pretty tough to buy." No objection was made to this argument. The court immediately, after closing arguments, gave the jury its instructions, including one that any statements made by counsel in their presence concerning the facts in the case must not be regarded as evidence and that the jurors were the sole judges of the credibility of witnesses.

It has been held that the prosecutor should not give his personal opinion in the manner expressed as to the lack of credibility of a defendant or a defense witness. (*People* v. *Perez*, 58 Cal.2d 229 [23 Cal.Rptr. 569, 373 P.2d 617].)

However, it is stated in *People* v. *Lyons*, 50 Cal.2d 245, 262 [324 P.2d 556], that: " 'The general rule regarding misconduct of the district attorney which tends to and is likely to result in prejudice to the defendant is that where no objection is made to such misconduct by the defendant, or where objection is made and the court sustains the objection and properly admonishes the jury, the misconduct claimed to be prejudicial to defendant's rights will not furnish grounds sufficient to justify the granting of a new trial or the reversal of the judgment. [Citation.]      There are two exceptions

to this general rule. One is where the case is closely balanced and there is grave doubt of defendant's guilt, and the acts of misconduct are such as to contribute materially to the verdict, a miscarriage of justice results requiring a reversal. [Citation] The other exception is where the act done or remark made is of such a character that a harmful result cannot be obviated or cured by any retraction of counsel or instruction of the court. In such cases the misconduct will furnish ground for a reversal of the judgment, even where proper admonitions are given by the court. [Citations.]' "

██ Probably, the statements made in the closing argument were the ones most harmful, but it might well appear that counsel for defendant invited this sort of argument. He was the one who first mentioned that defendant was called a "perjurer," when in fact that term was not used by the prosecutor until the closing argument and no objection was interposed. We have examined the entire record and believe it is a proper case for the invocation of article VI, section 4½, Constitution of California, since the identification of defendant was positive and he corroborated that identification by claiming that "He didn't even get close enough to identify me." We fairly believe that no different verdict would have resulted in the absence of the remarks made.

Judgment affirmed.

Coughlin, J., and Brown (Gerald), J., concurred.