**BILLY et al. v. STATE.**

No. A–12004.

Criminal Court of Appeals of Oklahoma.

June 9, 1954.

See, also, Okl.Cr.App., 266 P.2d 488.

Austin R. Deaton, Jr., Ada, for plaintiffs in error.

Mac Q. Williamson, Atty. Gen., Owen J. Watts, Asst. Atty. Gen., for defendant in error.

JONES, Judge.

The defendants Emerson Billy, Sprouse Billy, and Sampson McKinney were jointly charged by an information filed in the District Court of Pontotoc County with the crime of assault with intent to kill; were tried, convicted of the included offense of assault with a dangerous weapon, and pursuant to the verdict of the jury Emerson Billy and Sprouse Billy were sentenced to serve two years imprisonment in the penitentiary and Sampson McKinney was sentenced to serve one year in the penitentiary.

The sole question presented by the appeal is the contention that the county attorney was guilty of misconduct by asking incompetent and prejudicial questions of the defendant Sampson McKinney in the presence of the jury.

It is necessary to give a short summary of the evidence in order to properly understand the legal question which is presented. A. O. Abbott, the prosecuting witness, testi-

fied that he lived on State Highway No. 19, about one mile from Ada, in a four-room house. He worked as a carpenter in the daytime and sold whiskey at night. On the night in question about midnight, the prosecuting witness was in the front bedroom and a woman by the name of Gladys, whom the prosecuting witness said was his common-law wife, and another female by the name of Judy Anderson were sleeping in the back bedroom. About midnight, Abbott heard defendant Sprouse Billy at his door, demanding to see Gladys; that Sprouse turned around and spoke to someone in an automobile and said, "Come on in, Daddy," at which command, Emerson Billy and Sampson McKinney came into Abbott's house; that Sprouse Billy kept demanding money or whiskey and Emerson Billy knocked Abbott down and struck him several times with a knife. Shortly thereafter, Abbott and the three defendants, who were all Indians, walked back to the kitchen and Abbott called Gladys, who came from her bedroom to where the parties were all standing. Sprouse Billy demanded money from Gladys and Abbott went into the bedroom, put on his khaki pants, and when he returned to the kitchen he removed a five dollar bill from his billfold, handed it to Gladys, who in turn handed it to Sprouse Billy; that before Gladys entered the kitchen, Sprouse Billy struck Abbott three times with a knife, making seven cuts altogether which he received.

The female called Gladys testified that she became Abbott's common-law wife in October. She testified that she did not see any of the stabbing that was done with a knife but she saw that Abbott was bleeding profusely when she came from the bedroom. She admitted giving the five dollar bill to Sprouse Billy. On cross-examination she testified that she had been convicted of manslaughter and burglary and had served terms in the penitentiary.

Emerson Billy and Sampson McKinney testified that all of the three Indians had been in the habit of going to Abbott's place to purchase whiskey; that on the night in question Sprouse Billy went to the house to buy some whiskey and Abbott invited him in and told him to tell the others to enter;

that Sprouse Billy had been going with Gladys; that Sprouse Billy inquired for Gladys and Abbott got mad and knocked Emerson Billy to the floor and jumped on top of him and was striking him and that Emerson Billy took his knife and cut Abbott while they were lying on the floor. Thereafter, the parties went to the back bedroom where Sprouse Billy demanded Gladys pay him the $5 she owed him and Abbott took $5 from his billfold and gave it to her and she in turn handed it to Sprouse Billy. Sampson McKinney testified that when he noticed that Abbott was bleeding he offered to take him to the hospital but Abbott refused the offer. On cross-examination of Sampson McKinney, the record discloses the following:

"Q. Have you ever been convicted of a felony? A. No, sir.

"Q. You never have been convicted of a felony? A. No, sir.

"Q. I will ask you if you were convicted of the crime of assault with intent to kill, over in Coal County in 1949? A. I wasn't convicted.

"Q. Well, how did—tell us about it, then?

"By Mr. Colbert: Just a minute, if the Court please. He answered that he was not—

"By Mr. Colbert: Q. Did you say you were not convicted? A. I wasn't convicted.

"By Mr. Colbert: We object to any further questioning about it.

"By Mr. Fitzsimons: Q. Did you serve any time for it? A. No.

"Q. Did you plead guilty to it?

"By the Court: Now, if you have got some evidence and if you are pursuing this in good faith, then all right—

"By Mr. Fitzsimons: Well, we are in good faith.

"By the Court: —otherwise, why—

"By Mr. Fitzsimons: Well, we wouldn't ask him a question like that if we didn't have something to back it up with.

"By the Court: All right.

"By Mr. Fitzsimons: Q. Did you plead guilty to that crime? A. No, sir.

"By Mr. Fitzsimons: All right, that is all.

"By Mr. Colbert: The defendants rest.

"By Mr. Fitzsimons: The State closes, Your Honor."

It is contended that the county attorney was not in good faith in asking the questions and knew when the defendant denied having been convicted that he could not follow up the questions by making proof of such fact, and that his conduct in the presence of the jury was so prejudicial that it resulted in a conviction.

■ In the case of Kizer v. State, 67 Okl.Cr. 16, 93 P.2d 58, 60, this court established the following rules of law:

"It is error for the county attorney on cross-examination of the defendant's witnesses, or the defendant, to ask impeaching questions which tend to prejudice the defendant's rights, unless he follows such questions up by evidence to establish the facts contained in the questions propounded to the witnesses.

"When the record discloses that counsel for the State in a prosecution of a person charged with crime has been guilty of conduct calculated to arouse the prejudice or passion of the jury, and prevent the accused from having a fair and impartial trial, a conviction had should be set aside by the trial court, and a new trial awarded.

"The repeated asking of incompetent questions which clearly have for their purpose the intimation of something to the jury that is either not true, or not capable of being proved if true, is wrong and such conduct of counsel is not cured, even if the trial court sustains the objections to the questions."

■ In Gilbert v. State, 23 Okl.Cr. 352, 214 P. 936, it was held:

"Where it is contended that the trial court erred in permitting the county attorney to ask defendant an incompetent and prejudicial question on cross-examination, it must appear from the record that the question was asked for the evident purpose of taking an unfair advantage of defendant, by containing therein matter which the examiner knew to be untrue or else incapable of proof."

■ We cannot sustain counsel's contention that the alleged prejudicial error resulted in the conviction of Emerson Billy and Sprouse Billy. As to defendant McKinney, a different situation is presented. He did not strike the prosecuting witness and there is very little, if any, evidence to show his active participation in the affray in which Abbott sustained the injuries. The jury evidently was not very deeply impressed with Sampson McKinney's guilt because by their verdict they fixed the punishment at one year in the penitentiary and recommended that the sentence be suspended. The trial court, after defendant McKinney had twice denied any previous conviction, inquired of the county attorney whether or not he was pursuing that line of questioning in good faith and the prosecutor stated that he was in good faith and had something to back up his questioning. However, immediately after the questioning of Sampson McKinney was concluded, defense rested their case and the State also rested its case without the introduction of any further evidence, which left before the jury the prejudicial statement of the county attorney that he would not have been asking the questions if he did not have something with which to back up his questioning. Under all the circumstances of the case, we are of the opinion that this conduct was prejudicial to Sampson McKinney and denied him a fair and impartial trial.

The judgement and sentence of the District Court of Pontotoc County is affirmed as to Emerson Billy and Sprouse Billy, and is reversed and remanded for further proceedings as to the defendant Sampson McKinney.

POWELL, P. J., and BRETT, J., concur.