330 P.2d 1086

**STATE of Utah, Plaintiff and Respondent,**

v.

**Carlos HERRERA and Kenneth Navarez, Defendants and Appellants.**

No. 8804.

Supreme Court of Utah.

Nov. 5, 1958.

---

**6.** Union Pacific R. R. Co. v. Harris, 1895, 158 U.S. 326, 15 S.Ct. 843, 39 L.Ed. 1003.

in a car occupied by five young male Mexicans. She kissed at least one of them and joined them in drinking beer. She and the two defendants were left at a spot removed from town where defendants had intercourse with her, she insisting it was by force and against her will and they insisting that it was voluntary and with her consent.

Appellants urge error in 1) admitting on cross-examination, evidence elicited from a 17 year old occupant of the car, in 2) allowing impeachment of the prosecution's own witnesses, and in 3) not concluding that the cumulative errors were prejudicial.

Over repeated and strenuous objections of counsel, the wording of which needs no recounting here, the following colloquy was permitted by the trial court on cross-examination of the defense witness:

"Q. How old are you? A. 17.

"Q. You have been in a lot of trouble, haven't you? A. Yes, a bit, yes.

"Q. You have been arrested numerous times, haven't you? A. Not many times.

"Q. Have you been arrested numerous times for having sex relations with other girls? A. Once.

"Q. How about D——— W———?

A. That was her.

L. G. Bingham, Ogden, for appellants.

E. R. Callister, Jr., Atty. Gen., Gary L. Theurer, Asst. Atty. Gen., for the State.

HENRIOD, Justice.

Appeal from rape convictions. Reversed.

Prosecutrix, a 15 year old married Mexican mother voluntarily went for a ride

"Q. How about this K——— S———? A. No.

"Mr. Bingham: Your Honor, may the records show that the district attorney and the assistant district attorney in the presence of the jury are thumbing through leaves of paper and reading therefrom * * *

"The Court: It may so show. * * *

"Q. How about fighting with a knife in front of the Woodman of the World Hall? A. That was a false arrest too.

"Q. How about the theft of some pigeons? A. About seven years ago, yes. * * *

"Q. How about shooting a fellow in the eye with a BB gun? A. Yes. Carlos is the one I shot.

"Q. How about breaking windows out of 2548 Grant Avenue? A. No.

"Q. How about this, you, together with Lee Sanchez breaking windows in the West Ogden show? A. Yes.

"Q. How about shoplifting some chickens in Wilson Lane? A. No sir.

"Q. You were arrested for that weren't you? A. I was arrested. Yes."

Nothing appears in the record as to the disposition of the charges or arrests, the subjects of this cross-examination, and no official records were offered to substantiate the implications arising therefrom, such failure being emphasized by us simply to reflect the prejudice that may have been engendered, and not to condone or excuse such line of questioning.

■ There was nothing in the cross-examination above that was designed to attack three witness' credibility, except by way of innuendo, apparently based on the assumption that juvenile delinquency with attendant arrests is probative of the fact that one is a confirmed or congenital liar. The protraction of the type of cross-examination indulged here, with its inferences raised by asking questions that by and large were unsupported by anything save the form and substance of the questions themselves, in our opinion traveled into the domain of the prejudicial, having departed from a possibly less protracted examination that might have been error, but reasonably harmless.

Each case must be bottomed on its own circumstances, but suffice it to say, that the cloak of immunity a democratic process must throw around witnesses for an accused extend, in our opinion, to a foreclosure of the type of cross-examination permitted here, where it appears that the truth of the case reasonably was not being pursued, but where the character of the witness unreasonably was under attack by questions not pertinent in resolving the character trait involved,—all at the obvious expense and to the disadvantage of

the accused, who is entitled constitutionally to a fair and impartial trial.

If the line of cross-examination indulged here were to be permitted, the accused would find himself in a wilderness without witnesses, since none would volunteer the truth nor would the truth flow free under compulsory process, a witness knowing the extent to which he could be subjected to questions not pertinent to the issues involved, but designed to destroy his veracity by the simple device of calling attention to a series of incidents in his past life, perhaps harmless per se, perhaps true but having nothing to do with his truthfulness or the lack of it. The sheer weight of such marshalling of innuendoes well might unfairly make it appear that his telling of the truth would be a remote likelihood. Such technique takes on a complexion equally objectionable with untruthfulness itself, since it is a saber thrust directed at character assassination by the sharp edge of the half-truth.

The same sort of objection to such procedure can be levelled at the attempted impeachment of the prosecution's own witness, a physician, who testified that he saw no evidence of abrasions on the limbs of the prosecutrix, only to be called to account by the prosecution through questions implying that he had made an official report to the contrary, thus casting the doctor in the role of prevaricator,—*without offering to introduce such report in evidence (which was available).* The errors individually and collectively were prejudicial, in our opinion, requiring reversal.

McDONOUGH, C. J., and WADE and WORTHEN, JJ., concur.

CROCKETT, J., concurs in the result.