Eloy McDONALD, Plaintiff in Error,

v.

The STATE of Oklahoma, Defend-
ant in Error.

No. A–14465.

Court of Criminal Appeals of Oklahoma.

Oct. 6, 1971.

Leonard G. Geb and Raymond A. Trapp, Ponca City, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Hugh H. Collum, Asst. Atty. Gen., for defendant in error.

BRETT, Judge:

Eloy McDonald was charged by Information with the crime of Operating a Motor Vehicle While Under the Influence of Intoxicating Liquor. He was tried before a jury, found guilty, and his punishment set at One Year in the County Jail and a fine of $200.00. He lodged his appeal in this Court within the time prescribed by law asserting as his chief complaint that the State, in conducting cross-examination, was unfair and prejudicial and continued to interrogate him about previous convictions that they could not prove and were too remote from the principal crime to have any bearing upon his credibility as a witness.

In support of his contention he recites the cross-examination at page 106–108 of the casemade, as follows:

Q. Ever been convicted of a crime?

A. No, I haven't.
   You mean this drunk driving deal?

Q. Have you ever been convicted of a crime?
   Drunk or fighting?

A. Yes.

Q. Drunk?

A. Yes, sir.

Q. How many times? Every week?
   MR. GEB: Objection as to improper.
   THE COURT: Overruled, it is to test the credibility.

Q. MR. WELCH: How many times on the drunk?

A. I wouldn't say how many times. It is not every week. Two or three times a year.

Q. You had two or three convictions a year for being drunk?

A. No.

Q. Have you been convicted of being drunk since this case in February?

A. Yes, one time.

Q. How many times?

A. One time.
   BY MR. GEB: It is improper anything that happened subsequent.
   BY THE COURT: It is admissible to test credibility.

Q. BY MR. WELCH: What else have you been convicted of?

A. Drinking and disturbing the peace once in a while. Nothing serious.

Q. Convicted of larceny of chickens?

A. No, sir.

Q. When you were 17 years old?

A. I got in some trouble with my brother. I was turned loose on a suspended sentence.

Q. You were convicted and given a a suspended sentence?

A. Yes.

Q. What else?

A. That's all.

Q. What about when you were 19, were you convicted of desertion?

A. No, I had no desertion.

Q. Wife and child desertion?

A. I came over and made an agreement to pay her so much a month.

Q. Did you get a suspended sentence?

A. I did not get no suspended sentence.

Q. There was no conviction on that type of a charge?

A. I agreed to pay so much a month.

Q. I am asking about the disposition of the charge. Was there a conviction?
BY MR. GEB: Is it possible not to smear his name and not go into all of this?
BY THE COURT: The District Attorney has the right if he has been convicted of such a crime.
BY MR. GEB: He says he does not know. I do not know why he has to keep being harassed.

A. On no suspended sentence. I agreed to pay her $25.00 per month, and that is what I did.

Q. In this court here?

A. In this courthouse. I don't know whether it was this court or not. It has been so long.

Q. Were you convicted in 1940 of larceny of tires?

A. I definitely wasn't.

Q. Do you recall such a case?

A. I don't know what you are talking about. Tires—you have got something wrong. No tires, never.

Q. Any other charges you haven't told us about?

A. No, sir. I don't know where you got those tires at. I have never been here on no tires.

■ When the prosecutor asked such questions concerning the defendant's past record such as: "Convicted of larceny of chickens? * * * when you were 17 years old? * * * what about when you were 19, were you convicted of desertion?" Answer, "No, I had no desertion." "Were you convicted in 1940 of larceny of tires?" Answer, "I definitely was not."; and pursued them no further, he left the impression of conviction without proof, or even an offer of proof, thereof. This was improper and was no doubt, prejudicial to defendant.

There are a number of cases from other jurisdictions passing on this question. See, State v. Gustafson, 248 Or. 1, 432 P.2d 323; State v. Stago, 82 Ariz. 285, 312 P.2d 160; People v. Perez, 58 Cal.2d 229, 373 P.2d 617; State v. Glenn (Mo.) 262 S.W. 1030; State v. Herrera, 8 Utah 2d 188, 330 P.2d 1086.

We quote with approval from State v. Singleton, 66 Ariz. 49, 182 P.2d 920, as follows:

"But when, as here, such questioning is raised and then dropped with no further attempt on the part of the State to prove its point, the aforementioned 'fishing expedition' having failed, we believe it to be wholly improper and highly prejudicial. To allow this sort of examination would be to allow the imaginative and over-zealous prosecutor to concoct a damaging line of examination which could leave with the jury the impression that defendant was anything that the questions, by innuendo, seem to suggest. If the questions were persistent enough and cleverly enough framed, no amount of denial on the part of a defendant would be able to erase the impression in the mind of the jury that the prosecutor actually had such facts at hand and

that probably there was some truth to the insinuations."

Defendant also contends that some of the convictions referred to by the prosecutor were entirely too remote to test defendant's present credibility. The obvious one is the inquiry concerning "Larceny of Chickens" 28 years prior to the offense for which defendant was being tried, without showing any relationship to the charge of operating a motor vehicle while under the influence of intoxicating liquor. We note however, that defense counsel failed to enter an objection to the question; but notwithstanding that failure, the only purpose such a question could serve would be to create prejudice toward the defendant. We believe that the court should have required some clarification on its own motion because of the remoteness in time of the alleged conviction. In this respect the trial court enjoys considerable latitude and discretion and may interrupt an improper line of questioning at any time. We observe also in this respect, the very purpose for either side entering objections and preserving exceptions to adverse rulings of the court is: First, to permit the trial judge to exercise his discretion concerning the admissibility of the testimony; and secondly, to preserve the adverse ruling for appeal. The record shows that various prior objections had been entered, but for reasons unknown this *particular* line of questioning was not objected to.

In a sense of fairness, it seems reasonable when the prosecutor intends to inquire concerning an isolated remote prior conviction—especially when such conviction was sustained many years prior to the present charge; or, when such remote prior conviction is of an unrelated nature to the charge confronting the defendant, the trial court should be forewarned of the line of anticipated inquiry, in order that the trial judge may be placed in a position to properly evaluate the consequences of the inquiry and to rule accordingly. This forewarning should *not* be an ex-parte action on the part of the prosecutor, but should also advise defense counsel. In this case, some of the prosecutor's questions were obviously too remote to contribute to the determination of the charges on which defendant was being tried and only caused prejudice toward him. Admittedly, when the defendant takes the witness stand to testify, and especially one who has sustained a long line of convictions, which the prosecutor is presumably prepared to properly prove, the situation takes on an entirely different light. But even so, it must be expected that the prosecutor will be able to sustain his allegations of former convictions in accordance with the provisions of Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319, and others not cited herein.

It is presumed also, that the prosecutor—gaining his information from a "rap-sheet"—will pursue his duty of procuring the records of former conviction prior to trial if he intends to use the information of former convictions; otherwise, when defendant denies the conviction, or contends he did not have counsel, the State is bound by defendant's answers. It has long been the rule in this type of situation, when the defendant assumes the witness stand to testify in his own behalf he does so subject to inquiry concerning his former convictions; however, in cases such as this case, reference to a remote, unrelated conviction many years back may jeopardize an otherwise properly sustained conviction.

The proof in this case was sufficient to prove the charge of operating a motor vehicle while under the influence of intoxicating liquor; and, we conclude in this case that the trial judge did not commit reversible error in his rulings; but notwithstanding, we are of the opinion that it was improper, under the facts of this case, for the prosecutor to continue to inquire concerning defendant's prior convictions sustained 28 years earlier and not related to the charge, without offering proof thereof, in face of defendant's denial. We consequently conclude that de-

fendant was sufficiently prejudiced to require that the sentence of the trial court in this case should be modified.

Therefore, the sentence imposed in the District Court of Kay County, Case Number 21433, is modified from one year in the County Jail and a fine of $200.00, to confinement in the County Jail for 90 days and a fine of $100.00 and court costs; and as modified, the judgment and sentence is affirmed.

NIX, J., specially concurs.

BUSSEY, P. J., dissents.

NIX, Judge (specially concurring).

Defendant contends that some of the previous convictions complained of were entirely too remote to test defendant's credibility. In fact, one of the inquiries concerned Larceny of Chickens twenty-eight years prior to the offense for which defendant was being tried. This does create the question of whether the introduction of such crimes has any bearing upon the defendant's truth and veracity. We are inclined to believe the admissability of prior convictions to impeach defendant's credibility, should be vested in the discretion of the trial Court, under the rationale that a defendant's prior convictions would be admissable to impeach unless the defendant could persuade the trial Court that the prejudicial effect of the impeachment far outweighs the probative relevance of the prior conviction to the issue of credibility, or that even if relevant, the "cause of truth would be helped more by letting the jury hear the defendant's story than by defendant's foregoing that opportunity because of the fear of prejudice founded upon a prior conviction." Luck v. United States, 121 U.S.App.D.C. 151, 348 F.2d 763. Also, see Gordon v. United States (1967) 127 U.S.App.D.C. 343, 383 F.2d 936.

In relating the holding in *Luck* and *Gordon,* supra, it is noted that the court points out that in considering the exercise of the District Court's discretionary power, it will look to the "legitimate purpose" of impeachment—which is not to show that the defendant-witness is a "bad person", but rather to show background facts which bear directly on whether the jury should believe him as opposed to other witnesses.

A "Rule of Thumb" proposed by the Court is that convictions which rest on dishonest conduct relate to credibility, whereas those for violent or assaultive crimes do not. The Court also suggests that old convictions even for crime such as fraud or larceny should be generally excluded on the grounds of remoteness, when followed by a legally blameless life. Where the prior conviction or convictions are for the same or substantially same conduct for which the accused is on trial, there are, the Court notes, strong reasons for exclusion—mainly because of the temptation of the jury to conclude that if defendant did it before, he probably did it this time. In *Luck,* supra, the Court suggests a solution that impeachment in this area be limited to a single conviction, and then only where circumstances indicate strong reasons for disclosure and the conviction is for a crime which directly relates to veracity. And last, the Court suggests as a final factor which the trial Court should consider, is the effect on the fairness of the trial of the defendant not testifying out of fear of being prejudicial because of impeachment by prior conviction. In such situations, the Court suggests that the trial Judge hear the defendant's testimony, both direct and cross, outside the presence of the jury and then make a decision as to its admissibility. We are advised that some District Judges in the Western part of Oklahoma are now following this procedure and as a member of this Court, I feel that this type procedure as to prior convictions as they pertain to a witness' truth and veracity should be followed *from this date forward.*

A thorough discussion of the standards to be applied by the trial Judge is to be found in the *Gordon* case, supra. However, in the instant case, the trial Court

followed the old procedure and in the absence of this decision, did not err in permitting evidence of other offenses. However, it was error to permit the District Attorney to ask defendant if he had been convicted of other crimes about which the State offered no proof and said convictions were denied by defendant, for that reason we feel that the judgment of the trial Court should be modified, that justice may be best served.

Therefore, I concur that the judgment and sentence of said Court as modified be affirmed.