**William L. SOMERS, Appellant,**

**v.**

**The STATE of Oklahoma,**
**Appellee.**

**No. F–75–262.**

Court of Criminal Appeals of Oklahoma.

Oct. 3, 1975.

Don Anderson, Public Defender, Hugh Collum, Peter K. Schaffer, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Harold T. Garvin, Jr., Legal Intern, for appellee.

## OPINION

BLISS, Judge:

Appellant, William L. Somers, hereinafter referred to as defendant, was charged, tried before a jury and convicted of the crime of Rape in the First Degree in Oklahoma County District Court, Case No. CRF–74–2770. Punishment was assessed at a term of ninety-nine (99) years in the care and custody of the Oklahoma State Department of Corrections. From a judgment and sentence in conformance with the verdict the defendant has perfected his appeal.

Simply stated the evidence presented at trial is as follows: The complaining witness testified that she was a twenty-eight year old married woman who was employed as the general manager of an apartment complex in Del City. On or about the 12th day of August, 1974, she hired the defendant, a twenty-eight year old ex-convict, from a temporary personnel service as a laborer to do yard work and move furniture around the complex. On the 14th the defendant was helping the complaining witness move furniture into an empty apartment and when they were alone in the apartment he grabbed her from behind, holding a pair of grass shears to her neck and telling her to be quiet. After a struggle over the shears, the defendant finally overpowered her. The witness then asked the defendant if he had locked the front door and they went in the bathroom after the defendant noticed there were no curtains in the bedroom. The witness disrobed herself upon demand of the defendant who then placed the shears on the cabinet and attempted intercourse. The defendant achieved a slight erection, made penetration, but failed to ejaculate. After the defendant was "through", she told him to leave and take the shears with him. The witness then crawled out of the window and called her husband. On cross-examination the witness testified that none of her clothing was torn during the struggle and that she did not know what caused the slight abrasions on her face. She further stated that she did not tell anyone in the complex what happened until she had talked to her husband.

Dr. Robert P. McCoy then testified that he examined the complaining witness on the 14th approximately three hours after the incident. He found no motile sperm present within the vaginal tract and was unable to conclude from the examination whether there was any forced entry since there were no bruises or other evidence of trauma. The doctor vaguely recalled scratches on or about her face but believed that they were older-looking.

The assistant manager of the apartment unit then testified that the complaining witness had no bruises or abrasions on the morning of the 14th. After the alleged incident, she had hives and a scratch under her eye and a cut on her earlobe.

Officer Robert Strecker of the Del City Police Department testified that he arrested the defendant about one and one-half miles away from the apartment unit where the defendant was walking down a road. The defendant made no attempt to resist and stated "I didn't do it," when advised that he was being arrested for rape.

Detective A. L. Burgett testified that after advising the defendant of his rights the defendant first stated that he "didn't do it" and then later told the officer that "he did do it." He further told the officer where he had thrown the grass shears and they were subsequently found. On cross-examination the officer stated that the defendant never said that he had raped the complaining witness but only that "he just couldn't keep from doing it." Officer M. L. Huff then testified that he was present during the interrogation and that the defendant had stated that ". . . something just happened, something just snapped and he done it." The State then rested.

The defendant took the stand and testified on his own behalf stating that he was an ex-convict and was working for the temporary personnel service in Oklahoma City when he was sent to the apartment unit. During his employment, he had personal conversations with the complaining witness and during the course of these conversations she would laugh, wink and flirt with him. After work on the 13th, the complaining witness drove the defendant back to the employment service and during the trip he placed his hand upon her thigh. She smiled and never objected. The defendant further testified that while helping the complaining witness move furniture into an empty apartment on the 14th he made a pass at her by patting her on the backside. She immediately hugged and kissed him and told him to lock the door which he did. She then stated "You can ball me if you want to." He then suggested they go into the bathroom where they attempted intercourse. The defendant was unable to achieve an erection, made no penetration and suffered a premature ejaculation. Thereupon the complaining witness became very upset, called the defendant a "poor excuse for a man" and told him to get out and never come back. He took the shears with him and threw them in a creek because she had told him to get rid of them. Defendant further testified that she never indicated that she did not wish to have intercourse with him, that he could not read or write and that he only had a seventh grade education. During cross-examination the defendant admitted having been convicted of two more felonies other than those admitted on direct examination. He adamantly denied having ever been convicted of child molestation.

■ For reasons which will become apparent we will only consider two of the assignments of error raised by the defendant. The defendant's first assignment urges that the prosecuting attorney committed reversible error when he continued to cross-examine the defendant with reference to an alleged specific prior conviction for a sex offense after the defendant adamantly denied same and which the prosecutor failed to subsequently prove.

The complained of cross-examination is as follows:

"Q. (By the prosecutor) Okay. Mr. Schaffer asked you, 'Are these all of the crimes you have been convicted of?' I am asking that question again and keep in mind I checked with the State of Illinois last night. I ask you that question, 'Are these all the crimes you have been convicted of?'

"A. (Defendant) Yes.

"Q. You say yes?

"A. Yes.

"Q. In that robbery, are you the same William Lee Somers with the date of birth 11–12–46?

"A. Yes, sir.

"Q. And, your Illinois State Bureau of Investigation number is 1404676—that's the number you fell under on the armed robbery?

"A. I don't know.

"Q. If the record reflects that, would you assume that is true?

"A. Yes, I guess.

"Q. Are you the same William Lee Somers with the date of birth as 11/12/46, with the Illinois State Bureau of Investigation number of 1404676 that was convicted of child molestation and taking indecent liberties with a minor child?

"A. What?

"Q. I said are you the same William Lee Somers that was convicted of child molestation and taking indecent liberties with a minor child?

"A. No.

"Q. That just wasn't you?

"A. No, sir.

"Q. They got that name and number all mixed up that day?

"A. That wasn't me.

"Q. That wasn't you?

"A. No, sir."

*   *   *   *   *   *

"Q. Since you have sat there and thought about it, do you remember about this child molestation and taking indecent liberties with a minor child that they have on your record?

"A. I didn't do that.

"Q. Do you remember the charge?

"A. No, I did not do that. That wasn't me and I'm telling you right now that was not me.

"Q. And, they have that number and everything wrong or did you just forget about this one too?

"A. That was not me.

*   *   *   *   *   *

"Q. When did this child molestation take place?

"A. I don't know anything about that."

It is apparent from the record that during the cross-examination the prosecuting attorney was referring to some sort of written instrument he held in his hand, which he attempted to fortify by saying, "I did a little checking with the State of Illinois last night." After the cross-examination was completed, the State attempted in no way to prove that the defendant had in fact been convicted of child molestation as intimated, although defense counsel specifically demanded that the state prove by competent evidence the alleged prior conviction of molestation. His demand was overruled as well as his request that the court admonish the jury that the inferences arising from the prosecutor's cross-examination in that regard, molestation, were not to be considered by the jury.

In *Kizer v. State,* 67 Okl.Cr. 16, 93 P.2d 58, this Court held that it is a well-established rule that impeaching questions should not be propounded to a witness unless they are based upon facts that the prosecutor intends to present in refutation of an adverse answer. Such questioning should be done in good faith and not for the purpose of prejudicing and arousing suspicions of the jury against the defendant. See also *Billy v. State,* Okl.Cr., 272 P.2d 463.

In *Nelson v. State,* Okl.Cr., 288 P.2d 429 this Court held as follows:

"The record does not disclose that the court at any time admonished the jury to disregard the question in relation to the supposed sex crime conviction allegedly had in California, and no proof was offered in support of the supposed conviction. In the absence of such proof, we must conclude that the same was asked for the purpose of degrading or intimidating the defendant, and for the purpose of prejudicing the jury against the defendant."

See also *McDonald v. State,* Okl.Cr., 489 P.2d 776.

After an examination of the above cases, it is the opinion of this Court that in light of the record in the instant case we are compelled to find that the prosecutor acted in bad faith thereby depriving the defendant of a fair and impartial trial. This is especially true in the instant case where the evidence is conflicting and proof of guilt is not overwhelming.

The defendant next contends that the prosecuting attorney committed reversible error by arguing the defendant's past convictions and the punishment assessed for each in order to enhance defendant's punishment where the State had failed to charge the defendant with rape after former conviction of a felony. With this contention we wholeheartedly agree. That portion of the prosecutor's closing argument complained of is as follows:

"First of all, I proved him guilty of being a liar. Secondly, I want to talk to you about punishment. What we are dealing with here is a robber, a thief, a burglar, a rapist, hot check man—

"MR. SCHAFFER: Objection, Your Honor.

"THE COURT: Overruled.

"MR. INGMIRE: You are going to set punishment and I ask you to remember how long he served on that robbery. How long was he given, and how long was he in there? That testimony and that evidence is before you. That should tell you something."

It is obvious from the above that the reference by the prosecuting attorney to the defendant's prior criminal record and the amount of time that he had previously served went far beyond the question of his credibility and served only to inflame the prejudice and passion of the jury. Such action by the prosecuting attorney in the instant case constitutes clear and reversible error since the evidence presented at trial was conflicting and proof of guilt was not overwhelming. See *Baldwin v. State*, Okl.Cr., 519 P.2d 922 and *Thompson v. State*, Okl.Cr., 462 P.2d 299.

Because of this combination of errors as above set out, it is the opinion of this Court that the judgment and sentence appealed from should be and the same is hereby reversed and remanded for a new trial.

BRETT, P. J., and BUSSEY, J., concur.